[No. 41639-1-I.    Division One.    June 28, 1999.]

DAVID E. SVENDSEN, *Respondent*, v. GREGG N. STOCK, ET AL., *Defendants*, CONNIE EDWARDS, ET AL., *Appellants*.

*Douglas S. Tingvall*, for appellants.

*George Alfred Purdy* and *Charles Kenneth Wiggins*, for respondent.

APPELWICK, J. — This case arises out of a residential real estate transaction in which appellant John L. Scott represented the sellers and respondent David Svendsen was the buyer. In a jury trial, John L. Scott was found liable for fraudulent concealment and violation of the Consumer Protection Act (CPA). We hold that substantial evidence supports the jury's finding that John L. Scott had actual knowledge of an error, inaccuracy or omission in the seller disclosure form, and that the jury's damages award was within the range of evidence. We therefore affirm the

fraudulent concealment judgment and damages award. We reverse the trial court's award of attorney fees and punitive damages under the CPA, however, because we hold that the seller disclosure statute bars the CPA claim.

## FACTS

In October of 1995, David Svendsen purchased a house near Lake Sammamish from Gregg and Randi Stock. Connie Edwards of John L. Scott, Inc., was the listing agent representing the Stocks.

Some years before the sale, in 1991 and 1992, the Stocks experienced flooding on their property as a result of an overflow from a blocked storm drain on an uphill neighboring lot. In November 1994, the neighbors' drain again overflowed, but did not flood the Stocks' property on that occasion. In response to complaints from the Stocks and their neighbors, King County workers cleared the storm drain in March 1991, January 1992 and November 1994. But, no additional work was done to assure that the drain would not overflow again.

In August of 1995, the Stocks listed their house for sale with Connie Edwards of John L. Scott. At that time, the Stocks completed a seller's disclosure statement (Form 17), as required under RCW 64.06. Question 7A on the form asks: "Is there any settling, soil, standing water, or drainage problems on the property?" Mr. Stock testified that he had initially answered "yes" to this question, but changed his answer to "no" at Edwards' instruction. Mr. Stock explained to Edwards the history of the flooding on his property and its origin in the neighbors' yard. He also explained that King County had come out to clear the drain and the flooding problems had not recurred since the last time they had done so. Edwards told him he could change the answer on the form because he was not required to disclose a past defect that had been corrected. Mr. Stock then asked Edwards to disclose the flooding problems to any prospective buyer, and to tell the buyer to call the county if

the property flooded as a result of another clog in the neighbors' drain. Despite Mr. Stock's request, Edwards did not disclose the drainage problems to Svendsen or his agent.

Form 17 contained the additional question: "Are there any other material defects affecting this property or its value that a prospective buyer should know about?" This question was also answered "no."

Trial testimony revealed that Edwards also had independent knowledge of drainage problems on the neighboring property. According to Mr. Stock, when he discussed the prior flooding with Edwards, she told him that she had "seen it." Edwards explained at trial that she had represented the buyers in a sale of the neighbors' property in the fall of 1994, and witnessed standing water in the neighbors' backyard from a clogged storm drain at that time. She testified that the buyers later told her that they had called the county, and that county workers had come and cleared an obstruction from the pipe. Edwards relied on the buyers' assurances and believed that the county had fixed the problem; she did not investigate the matter further.

On September 25, 1995, Svendsen and the Stocks entered into a purchase and sale agreement. Svendsen had the home inspected; the inspector did not note a potential problem with flooding from the neighbors' property.

Soon after Svendsen purchased the property, in November 1995 and February 1996, the storm drain on the neighboring lot again overflowed, causing Svendsen's garage and driveway to flood. Once again, King County cleared out the drain on the neighbors' property.

In the summer of 1997, the county dug up the storm drain on the neighbors' property and removed two large obstructions from the pipe. Nonetheless, a King County engineer testified at trial that the drainpipe could again become blocked by "sticks, logs, basketballs, just about anything."

Svendsen sued the sellers, the homeowners association,

the home inspector, and John L. Scott. The sellers filed bankruptcy, Svendsen settled with the homeowners association, and the trial court dismissed the claims against the inspector on summary judgment. The remaining claims of fraudulent concealment, negligent misrepresentation, and violation of the Consumer Protection Act against John L. Scott were tried to a jury. Trial was held between September 15 and 19, 1997, in King County Superior Court. The jury found John L. Scott liable for fraudulent concealment and violation of the Consumer Protection Act, but not for negligent misrepresentation. The jury also found, in its special verdict form, that there was an "error, inaccuracy, or omission in the Form 17," and that John L. Scott had "actual knowledge of the error, inaccuracy, or omission in the Form 17 at the time of sale." The jury found John L. Scott 95% at fault and the sellers 5% at fault.

Svendsen's claimed damages included damage to his property and the cost of cleanup, plus $32,600 for the estimated cost of installing a gravity flow drainage system on his property. The jury awarded Svendsen damages of $38,298. The court awarded punitive damages of $6,500 and attorney fees of $17,500 under the Consumer Protection Act. John L. Scott appeals and Svendsen cross-appeals.

Fraudulent Concealment Claim

A. Substantial Evidence.

John L. Scott argues that the trial court erred in entering judgment on the fraudulent concealment claim, because substantial evidence does not support the jury's finding that the seller disclosure statement contained an error, inaccuracy or omission, and that Edwards had actual knowledge of the error, inaccuracy or omission. John L. Scott argues that the evidence showed instead that Edwards reasonably believed the drainage problem had been corrected.

A finding of fact will not be overturned if it is supported by substantial evidence. *Thorndike v. Hesperian Orchards,*

*Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). Substantial evidence is evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *Bering v. Share*, 106 Wn.2d. 212, 220, 721 P.2d 918 (1986).

■ To uphold John L. Scott's liability for an error, inaccuracy or omission in the seller disclosure statement, substantial evidence must show that Edwards had "actual knowledge" of the error, inaccuracy or omission. *See* RCW 64.06.050(2). "The requirement of actual knowledge does not encompass facts which the [broker] should have known." *Atherton Condominium Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 532-33, 799 P.2d 250 (1990).

■ In addition, to uphold John L. Scott's liability for fraudulent concealment, substantial evidence must show that Edwards had knowledge of an existing material defect on the property, not reasonably ascertainable to the buyer, which she did not disclose. *See McRae v. Bolstad*, 32 Wn. App. 173, 176-77, 646 P.2d 771 (1982), *aff'd*, 101 Wn.2d 161, 676 P.2d 496 (1984); *Hughes v. Stusser*, 68 Wn.2d 707, 711, 415 P.2d 89 (1966). A broker cannot be held liable if she reasonably believes that a past defect has been corrected. *Luxon v. Caviezel*, 42 Wn. App. 261, 265, 710 P.2d 809 (1985).

Although we view this as a close case, we hold there was sufficient evidence of Edwards' actual knowledge of an existing drainage problem affecting the Stocks' property to uphold the fraudulent concealment verdict. The Stocks told Edwards that the flooding problem on their property originated on the uphill neighboring lot. Edwards had independent knowledge of a drainage problem on the neighboring lot in the fall of 1994. The Stocks exhibited a lack of confidence that the problem was permanently corrected: they told Edwards that the problem had recurred in the past, and asked her to disclose it to any future buyers. This evidence was sufficient for the jury to conclude that Edwards had actual knowledge of the problem and did not reasonably believe it had been corrected.

If Edwards' advice to the Stocks not to disclose the flooding problem had been based on information she obtained from King County records, and if the records indicated that the problem had been corrected, John L. Scott might have escaped liability. The seller disclosure statute relieves a broker of liability for an error, inaccuracy, or omission in a real property transfer disclosure statement, if the disclosure was based on information provided by public agencies. RCW 64.06.050 (2). Here, however, the only information Edwards had that the problem might have been corrected came from the neighbors, who told her that the county had cleared an obstruction from the pipe in 1994, and from the Stocks themselves, who told her that the problem had not recurred since the last time the county cleared the pipe. Edwards made no further inquiry into the matter.

We are persuaded that imposing liability on John L. Scott here is not unfair. Because of Edwards' interference, Svendsen did not receive notice of the potential flooding problem. On Edwards' instructions, the sellers marked "no" to question 7A on Form 17, when they had originally planned to mark "yes." Edwards failed to follow the sellers' instructions to disclose the problem to potential buyers. Edwards' actions were based in part on her independent knowledge of the drainage problem; she therefore had a duty to be accurate in her assumptions about whether the problem was indeed corrected.

## B. Damages Award.

John L. Scott contests the jury's damages award of $38,298. John L. Scott argues that Svendsen was not entitled to recover the cost of installing a gravity drainage system, at an estimated cost of $32,600, because King County permanently corrected the drainage problem when it removed two large obstructions from the neighbors' pipe in the summer of 1997.

We will not disturb a jury's damages award unless it is outside the range of substantial evidence. *Wooldridge v. Woolett*, 96 Wn.2d 659, 668, 638 P.2d 566 (1981).

Although King County cleared the neighbors' pipe in the summer of 1997, a King County engineer testified that the pipe could plug again. The pipe has plugged repeatedly in the past, despite periodic clearing. The gravity drain is designed to prevent flooding on Svendsen's property even if the neighbors' drain again becomes plugged. This evidence sufficiently supports the jury's damages award.

### Consumer Protection Act Claim

John L. Scott argues that the trial court erred in awarding Svendsen punitive damages and attorney fees under the CPA. John L. Scott contends that the CPA claim is expressly barred by the seller disclosure statute, RCW 64.06.060. We agree.

"[T]he question of whether particular actions gave rise to a violation of the Consumer Protection Act is reviewable as a question of law." *Keyes v. Bollinger,* 31 Wn. App. 286, 289, 640 P.2d 1077 (1982).

Washington's Consumer Protection Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. RCW 19.86.020. To establish a claim under the CPA five elements must be proven: "(1) unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

John L. Scott argues that the seller disclosure statute precludes Svendsen from establishing the "public interest impact" element of his CPA claim. The statute expressly provides that "the practices covered by this chapter are not matters vitally affecting the public interest for the purpose of applying the consumer protection act." RCW 64.06.060. This language is echoed in the Senate Bill Report for the Act: "Violations of this act do not constitute a violation of the Consumer Protection Act." SB 6283, 53d Leg., Reg. Sess. 2 (Wash. 1994).

Svendsen contends, however, that his CPA claim is not barred because it does not arise out of the seller disclosure statement, but is based, instead, upon the jury's verdict of fraudulent concealment. He relies on a separate provision of the seller disclosure statute, which provides that "nothing in this chapter shall extinguish or impair any rights or remedies of a buyer of real estate against the seller or against any agent acting for the seller otherwise existing pursuant to common law, statute, or contract." RCW 64.06.070.

We hold that, under the facts of this case, the fraudulent concealment verdict is not separable from the Form 17 violation. The seller disclosure statute establishes an affirmative duty on the part of the seller to disclose the information requested on Form 17; question 7A specifically requests disclosure of any drainage problems. *See* RCW 64.06.020(1). Moreover, Connie Edwards learned that the Stocks had experienced flooding on their property, and advised them not to disclose the problem, while she was assisting them in filling out the form. Had the form been filled out properly, this lawsuit would not have arisen. In other words, the events at issue in this lawsuit are "practices covered by [the seller disclosure statute]." RCW 64.06.060.

Although the seller disclosure statute preserves a buyer's remedies "otherwise existing pursuant to common law, statute, or contract," RCW 64.06.070, it also expressly states that the practices covered by the statute are not matters affecting the public interest, RCW 64.06.060. Therefore, we must conclude that Svendsen cannot establish the public interest impact element of his CPA claim. He is therefore precluded from recovering punitive damages and attorney fees under the CPA.

The cases that Svendsen cites to support his argument that a broker's failure to disclose a known material defect in the sale of real property is a violation of the CPA are distinguishable; all of those cases were decided before the

seller disclosure statute took effect.[1] *See McRae v. Bolstad*, 101 Wn.2d 161, 676 P.2d 496 (1984) (holding real estate agent's failure to disclose chronic sewage and drainage problems violated CPA); *Robinson v. McReynolds*, 52 Wn. App. 635, 762 P.2d 1166 (1988) (holding real estate agent's failure to disclose property's lack of income potential violated CPA); *Luxon v. Caviezel*, 42 Wn. App. 261, 710 P.2d 809 (1985) (holding listing of house in multiple listing service as four bedroom house when septic system permit allowed only two bedrooms violated CPA).

In his cross-appeal, Svendsen argues that the trial court erred in calculating his attorney fees under the CPA, and that he is entitled to attorney fees on appeal under the CPA. Because we reverse the CPA judgment, we decline to consider whether the court erred in calculating Svendsen's attorney fees. Similarly, Svendsen is not entitled to attorney fees on appeal.

## SUMMARY

We affirm the fraudulent concealment judgment and the jury's damages award. We reverse the CPA judgment and the court's award of punitive damages and attorney fees under the CPA. We decline to award attorney fees on appeal.

Affirmed in part, reversed in part.

COLEMAN and ELLINGTON, JJ., concur.

Review granted at 140 Wn.2d 1028 (2000).

---

[1] The effective date of the residential real property seller disclosure statute was January 1, 1995. RCW 64.06.900.