[No. 69283-1. En Banc.]
Argued November 16, 2000. Decided May 17, 2001.

DAVID E. SVENDSEN, *Petitioner*, v. GREGG N. STOCK, ET AL., *Defendants*, CONNIE EDWARDS, ET AL., *Respondents*.

---

*Charles K. Wiggins* (of *Wiggins Law Offices, P.L.L.C.*); and *George A. Purdy* (of *Simburg, Ketter, Sheppard & Purdy, P.S.*), for petitioner.

*Douglas S. Tingvall*, for respondents.

ALEXANDER, C.J. — We granted David Svendsen's petition to review a Court of Appeals decision (1) affirming a judgment, based on a jury verdict, for damages in favor of Svendsen and against John L. Scott, Inc., and one of its agents, Connie Edwards, for Edwards' fraudulent concealment of a defect, but (2) reversing an award to Svendsen of additional damages and attorney fees under the Consumer Protection Act (CPA), chapter 19.86 RCW. The primary issue before us is whether a provision in chapter 64.06 RCW (the "seller disclosure statute") exempts a real estate agent or broker from liability to a home buyer under the CPA for fraudulently concealing matters that are to be disclosed in a seller's disclosure statement. We conclude that the Court of Appeals correctly determined that the statute precludes an action against a real estate agent or broker in cases where the claim for fraudulent concealment arises directly from the completion of the disclosure statement. We hold, however, that it incorrectly held that the fraudulent concealment verdict was not separable from the seller disclosure statute violation. Because the fraudulent concealment by the real estate agent was separate and apart from the seller's completion of the disclosure statement, we conclude that Svendsen established the elements of an independent cause of action against Scott and Edwards under the CPA. Accordingly, we reverse the Court of Appeals and reinstate the trial court's award of damages under the CPA and remand for a recalculation of attorney fees.

## I. Facts

In August 1995, Gregg and Randi Stock listed their Lake Sammamish home for sale with real estate agent Connie Edwards of John L. Scott, Inc. In listing their home, the Stocks were required to prepare a statutorily required real property transfer disclosure statement (seller disclosure form), the purpose of which is to disclose to buyers of real estate certain matters relating to the property which are known to the seller. *See* RCW 64.06.020. One of the matters that is to be disclosed is whether the seller's property has any "standing water[] or drainage problems on the property." RCW 64.06.020(I) ("**SELLER'S DISCLOSURES**" at *A of section "**7. GENERAL**").

The Stocks were aware as early as 1991 that their property had water problems. In that year and the succeeding year, water flowed onto their property when a storm drain on an adjoining uphill property became blocked. In April 1994, the drain on the adjoining property again became blocked and caused water to back up. The water did not, however, come onto the Stocks' property on that occasion. On all three occasions, King County workers cleared the storm drain in response to complaints from the Stocks and other neighbors.[1] Between November 1994 and August 1995, no additional work was undertaken by the county to assure that the water problem would not reoccur.

While completing the seller disclosure form, the Stocks were confronted with the question of whether the property had any "standing water, or drainage problems." Ex. 6, at 4. Mr. Stock testified that he initially answered "yes" to this question, but changed his answer to "no" based on instructions from Edwards.[2] The change was made after Mr. Stock

---

[1] Mr. Stock testified that the flooding had caused "three or four inches of water" to accumulate in their garage and that water ponded in front of their garage as much as "20 feet in diameter" and "two and a half feet" deep. Verbatim Report of Proceedings (RP) (Sept. 17, 1997) at 257, 261.

[2] A similar change was made to question 8, which reads, "Are there any other material defects affecting this property or its value that a prospective buyer should know about?" Ex. 6, at 4.

told Edwards about the past flooding problems and the activities of employees of King County. Mr. Stock said that Edwards told him that he could change his answer because he was not required to disclose a past defect that had been corrected. Specifically, Edwards told him not to disclose the history of the flooding because it "is not happening right now." Verbatim Report of Proceedings (RP) (Sept. 18-19, 1997) at 146. Although Mr. Stock deferred to Edwards in filling out the form, he asked Edwards to disclose the prior instances of flooding to any prospective buyers, and to tell them that "if the drain in the neighbor's yard plugged up to call the county." RP (Sept. 18-19, 1997) at 254-55.

The seller disclosure form was given to Svendsen after he made an offer to purchase the Stock's home. Despite Mr. Stock's request that Edwards disclose the prior flooding problems to prospective buyers, Edwards failed to make any such disclosures to Svendsen or his agent. Although Svendsen had the home inspected, the inspector failed to note any potential flooding problems. Consequently, in October 1995, Svendsen purchased the Stocks' home.

In November 1995 and February 1996, the storm drain on the neighboring property again became clogged and, as a consequence, water flowed onto Svendsen's property. This flooding caused substantial damage to the property. Although King County workers again cleared the drain, a county engineer testified that the drainpipe could again become blocked by "sticks, logs, basketballs, just about anything." RP (Sept. 17, 1997) at 335.

Svendsen sued John L. Scott, Inc., and Edwards, together with the Stocks, a homeowners association, and a King County building inspector. At the time of trial, only Edwards and Scott (collectively referred to as "Scott") remained as defendants. Svendsen's claims against them were for liability for fraudulent concealment, liability for negligent misrepresentation, and violation of Washington's CPA, chapter 19.86 RCW.

Testimony was presented at trial that Edwards had independent knowledge of the water drainage problems on

the neighboring property on which the storm drain was located. This testimony revealed that Edwards learned about these problems in 1994 when she represented buyers of that property. Mr. Stock testified that when he discussed the instances of prior flooding with Edwards, she told him that she had "seen it." RP (Sept. 17, 1997) at 259, 285. In addition, Edwards conceded that she had witnessed "water standing in the [uphill neighbor's] back yard" from a clogged storm drain. RP (Sept. 17, 1997) at 374. Edwards also testified that the buyers of that property later told her that they had called officials at King County who sent workers to the property to clear an obstruction from the drainpipe on the property. She went on to say that she relied on those buyers' assurances in forming her belief that the county had remedied the problem.

A jury found that although Scott fraudulently concealed the existence of water and drainage problems and violated the CPA, it did not engage in negligent misrepresentation. The jury assessed damages at $38,298, finding Scott 95 percent at fault and the Stocks 5 percent at fault. The trial judge thereafter entered a judgment against Scott in the amount of the jury verdict and, in addition, entered findings of fact and conclusions of law in support of an award to Svendsen of $6,500 in additional damages pursuant to the CPA, RCW 19.86.090. Although Svendsen sought attorney fees under the CPA in the amount of $27,478, the trial court only awarded him fees in the amount of $17,500.

Scott appealed to the Court of Appeals, Division One. That court reversed the trial court in part and affirmed it in part. Although it determined that substantial evidence supported the jury's finding of fraudulent concealment, it concluded that Scott had no liability under the CPA. It, therefore, held that the Stocks were not entitled to an award of additional damages or attorney fees. Both parties petitioned for review. We granted Svendsen's petition, but denied Scott's petition.[3]

---

[3] The only issue Scott raised in its cross-appeal was its claim that the jury's

## II. Analysis

Svendsen contends that the Court of Appeals erred in holding that his CPA claim is expressly barred by a provision in the seller disclosure statute. He argues, additionally, that even if we hold that this statute precludes his CPA claim insofar as it was based on Scott's involvement in preparing the seller disclosure form, another provision in the seller disclosure statute preserves his separate cause of action under the CPA based on Edwards' failure to disclose to the buyer its independent knowledge of drainage problems on the subject property. Svendsen contends, in addition, that the trial court erred in "failing to follow the lodestar analysis in computing attorney fees under the CPA."[4] Pet. for Review at 18.

### A. Consumer Protection Act Claim

■■ "[T]he question of whether particular actions gave rise to a violation of the Consumer Protection Act is reviewable as a question of law." *Keyes v. Bollinger*, 31 Wn. App. 286, 289, 640 P.2d 1077 (1982). Under Washington's CPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. RCW 19.86.020. To establish a claim under the CPA, five elements must be established: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

The Court of Appeals held here that a provision in the seller disclosure statute, RCW 64.06.060, prevents Svendsen from establishing the "public interest element" of the CPA. It provides that "the practices covered by this

finding of fraudulent concealment was not supported by substantial evidence.

[4] Because the Court of Appeals reversed the judgment in favor of Svendsen for additional damages and attorney fees under the CPA, it did not reach this issue.

chapter are not matters vitally affecting the public interest for the purpose of applying the consumer protection act." RCW 64.06.060. The Court of Appeals read that provision to mean that because Scott's liability stemmed from Edwards' participation in filling out the disclosure form, its acts and omissions in this regard do not affect the public interest and thus are not subject to the CPA.

Svendsen makes two primary arguments in support of his contention that RCW 64.06.060 does not insulate Scott from liability under the CPA. Svendsen first contends that the Court of Appeals misconstrued RCW 64.06.060 in concluding that Scott's actions are "practices covered by" the seller disclosure statute. He contends, additionally, that the Court of Appeals erred in failing to reconcile the aforementioned statute with RCW 64.06.070, which expressly preserves a buyer's remedies "otherwise existing pursuant to common law, statute, or contract."

Turning to Svendsen's first argument, Svendsen contends that the language of RCW 64.06.060 applies only to the actions of sellers, not actions of real estate agents or brokers. He posits that because Scott's actions, as a broker/agent, are not "practices covered by" the seller disclosure statute, the statutory exemption from the CPA has no application to Scott. In furtherance of this argument, Svendsen suggests that RCW 64.06.020 imposes a disclosure obligation on sellers only, not on agents. He points to language in that statute indicating that the seller's disclosure statement is "only a disclosure made by the seller, and not any real estate licensee involved in the transaction." RCW 64.06.020(2). Consistent with this mandate, the disclosure form must state that "THE FOLLOWING ARE DISCLOSURES MADE BY THE SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE LICENSEE OR OTHER PARTY." RCW 64.06.020(1).

Svendsen's argument is unpersuasive. We say that because it does not take into consideration the fact that although RCW 64.06.020 applies only to sellers, certain actions of real estate brokers and agents are practices

covered by chapter 64.06 RCW. We note in this regard that another statute within chapter 64.06 RCW recognizes the role that agents often play in the preparation of disclosure forms, the statute indicating that "[a]ny licensed real estate salesperson or broker involved in a residential real property transaction is not liable for any error, inaccuracy, or omission in the real property transfer disclosure statement *if the licensee had no actual knowledge.*" RCW 64.06.050(2) (emphasis added). By implication, it would follow that brokers or agents would have liability, absent another statutory provision providing an exemption from liability, if they have knowledge that the seller made errors or omissions in the disclosure statement.

More significantly, the fact the legislature made a point of exempting brokers and agents from liability under the CPA for the "practices covered by" the seller disclosure statute, suggests it had agents and brokers in mind. We reach that conclusion because it is unlikely that the conduct of a single private seller would ever be within the sphere of trade and commerce and, thus, fall under the CPA. Consequently under Svendsen's interpretation of RCW 64.06.060—that the statute does not encompass real estate agents or brokers—the language of the statute would be essentially unnecessary and meaningless. Statutes must not be construed in a manner that renders any portion thereof meaningless or superfluous. *Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 756 P.2d 736 (1988) (citing *Avlonitis v. Seattle Dist. Court*, 97 Wn.2d 131, 138, 641 P.2d 169, 646 P.2d 128 (1982)). In sum, it is our view that RCW 64.06.060 reflects the intent of the legislature to preclude agents and brokers from liability under the CPA for fraudulent concealment arising directly from their conduct in completing the seller disclosure statement.

■ Svendsen's second argument has more merit. He contends that RCW 64.06.070 preserves an independent cause of action under the CPA against a real estate agent when the fraudulent concealment is not connected to the seller disclosure statute. That statute provides:

Except as provided in RCW 64.06.050, nothing in this chapter shall extinguish or impair any rights or remedies of a buyer of real estate against the seller or against any agent acting for the seller otherwise existing pursuant to common law, statute, or contract; nor shall anything in this chapter create any new right or remedy for a buyer of residential real property other than the right of recision exercised on the basis and within the time limits provided in this chapter.

RCW 64.06.070. Svendsen claims that this statute evidences the legislature's intent to preserve for the buyer of residential property all remedies that such a buyer would have at common law, or by virtue of statute or contract. The remedy that is preserved, according to Svendsen, is an independent common law cause of action under the CPA based on fraudulent concealment by the agent/broker that arose apart from filling out the seller disclosure form. In furtherance of this argument, Svendsen cites to several cases that were decided prior to the adoption of the seller disclosure statute, that stand for the proposition that an agent's failure to disclose a known material defect in the sale of real property is a violation of the CPA. *See McRae v. Bolstad*, 101 Wn.2d 161, 676 P.2d 496 (1984) (holding that a real estate agent's failure to disclose chronic sewage and drainage problems violated CPA); *Robinson v. McReynolds*, 52 Wn. App. 635, 762 P.2d 1166 (1988) (holding that a real estate agent's failure to disclose property's lack of income potential was a violation of the CPA); *Luxon v. Caviezel*, 42 Wn. App. 261, 710 P.2d 809 (1985) (holding that the listing of a house in multiple listing service as a four bedroom house when the septic system permit allowed only two bedrooms was a violation of the CPA).

The Court of Appeals disagreed with Svendsen's contention that he had a valid CPA claim that arose independently of Edwards' activities surrounding the seller disclosure statute. In reaching its decision, that court reasoned:

We hold that, under the facts of this case, the fraudulent concealment verdict is not separable from the Form 17 violation. The seller disclosure statute establishes an affirmative

duty on the part of the seller to disclose the information requested on Form 17; question 7A specifically requests disclosure of any drainage problems. *See* RCW 64.06.020(1). Moreover, Connie Edwards learned that the Stocks had experienced flooding on their property, and advised them not to disclose the problem, while she was assisting them in filling out the form. Had the form been filled out properly, this lawsuit would not have arisen. In other words, the events at issue in this lawsuit are "practices covered by [the seller disclosure statute.]" RCW 64.06.060.

*Svendsen v. Stock*, 98 Wn. App. 498, 506, 979 P.2d 476 (1999) (alteration in original), *review granted*, 140 Wn.2d 1028, 10 P.3d 407 (2000).

Had the fraudulent concealment in this case occurred only as a consequence of Edwards' participation in filling out the seller disclosure form, the Court of Appeals would have been correct in concluding that RCW 64.06.060 bars his CPA claim. The fraudulent concealment claim, which underlies his CPA claim, was not, however, so narrowly based. As we have observed above, Svendsen presented evidence to the jury that Edwards fraudulently concealed her independent knowledge of the flooding problem on the subject property. Edwards, according to the record, became aware of the drainage problem on the uphill property prior to the time Svendsen purchased the Stock's home. Edwards indicated that she knew of this problem because of her representation of the buyers of the uphill property. Indeed, Mr. Stock and Edwards both testified that Edwards had "seen [the flooding problem]" during the time she represented the buyers of that property. RP (Sept. 17, 1997) at 259, 285. Faced with this evidence, the jury found that Scott did "commit fraudulent concealment," a finding that the Court of Appeals determined was supported by substantial evidence. Clerk's Papers at 92. The fact that Edwards had knowledge of the water problems, independent of Edwards' involvement in preparing the seller disclosure form, and failed to disclose this knowledge to Svendsen or his agent provides support for the jury's determination that Scott

committed fraudulent concealment.[5] That being the case, we hold that the Court of Appeals erred when it concluded that "[h]ad the [seller disclosure] form been filled out properly, this lawsuit would not have arisen." *Svendsen*, 98 Wn. App. at 506.

Being satisfied that there was substantial evidence that the fraudulent concealment occurred independently from the seller disclosure violation, the next question before us is this: did Scott's fraudulent concealment, as a matter of law, constitute a violation of the CPA, as the jury determined?

As we observed above, cases that predated the seller disclosure statute have uniformly held that an agent or broker violates the CPA when they knowingly fail to disclose a known material defect in the sale of real property. The Court of Appeals distinguished these cases on the grounds that they were decided before the seller disclosure statute took effect. We find this distinction inapposite. While it appears the seller disclosure statute exempts agents and brokers from liability under the CPA for fraudulent concealment arising directly from the seller disclosure statute, it is difficult to believe that the legislature intended to eviscerate preexisting protections afforded to home buyers prior to the adoption of the seller disclosure statute. A more reasonable interpretation of the legislature's intent is that it expressly reserved all existing remedies for residential purchasers in RCW 64.06.070. In that regard, our interpretation is in accord with the goal of the CPA that it "shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920. Indeed, Scott seems to agree with us when it concedes that "RCW 64.06.050 does not prevent homebuyers from establishing the public interest element of a CPA violation by other means in the context of a fraudulent concealment claim where the concealment exists independent of the

---

[5] Our determination is buttressed by the trial court's unchallenged instruction to the jury on the fraudulent concealment claim to the effect that the plaintiff need only show that an agent or broker had knowledge of the existence of a concealed defect in the property and the agent failed to disclose such knowledge to the buyer or the buyer's agent.

seller disclosure statement." Cross-Pet. & Answer to Pet. for Review at 12.

 Finally, we turn to the legal question of whether Svendsen established the public interest requirement of the CPA. The public interest requirement is established by evaluating several factors: (1) whether the acts were committed in the course of defendant's business; (2) whether the defendants advertised to the public; (3) whether the defendant actively solicited the plaintiff, indicating other potential solicitation of others; and (4) whether the parties occupied unequal bargaining positions. *Hangman Ridge*, 105 Wn.2d at 790-91. We have held that none of these factors is dispositive nor is it necessary that all be present. *Id.* at 791. We conclude that the public interest requirement of the CPA was established. The record shows that Scott's conduct in concealing its knowledge of the drainage problems on the property occurred in the course of Scott's business. It also shows that Scott advertised the subject property to the public by listing it in the multiple listing service directory. Under the circumstances, it cannot be said that the parties occupied equal bargaining positions.

## B. Attorney Fees

 Svendsen asserts that the trial court abused its discretion in not employing a "lodestar" analysis in determining the amount of fees he was to be awarded under the CPA. Washington courts use the lodestar method in determining the reasonableness of attorney fees under the CPA. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 334, 858 P.2d 1054 (1993). Under this method, the fee is calculated by multiplying the reasonable hourly rate by the reasonable number of hours incurred, and may in rare instances be adjusted upward or downward at the court's discretion.

Here, Svendsen supported his request for an award of attorney fees by submitting a declaration from his attorney in which he detailed the hours worked, the type of work

performed, the category of the attorney who performed the work, and the fees for nonlawyer services. The attorney calculated fees at $42,422, but segregated out the cost of pursuing the CPA claim. This resulted in a fee request of $27,478. Svendsen contends that the trial court appears to have rejected a lodestar analysis and instead awarded him about one-third of his attorney fees ($16,500).[6]

■ The record is simply insufficient for us to determine how the trial court determined the amount of attorney fees to be awarded to Svendsen. It did not enter written findings of fact or conclusions of law to explain the analysis it employed in determining the fee award. Faced with this record, we remand to the trial court to enter findings of fact and conclusions of law, which set forth the manner in which attorney fees were computed.

### C. Attorney Fees on Appeal under RCW 19.86.090

■ Svendsen also asks us to award him attorney fees incurred on appeal. Attorney fees are recoverable at trial and on appeal under the CPA. *See* RCW 19.86.090; RAP 18.1. Having prevailed as to the merits of his CPA claim, we conclude Svendsen is entitled under RCW 19.86.090 to be awarded reasonable attorney fees on appeal. The clerk of this court will determine a reasonable fee upon Svendsen's compliance with the requirements of RAP 18.1(d).

### III. Conclusion

For reasons stated above, we reverse the Court of Appeals and reinstate the judgment the trial court entered for additional damages under the CPA. We remand the matter for a recalculation of the award of attorney fees to Svendsen

---

[6] The trial judge later increased the fees by $1,000 for services Svendsen's attorney provided at Svendsen's motion for reconsideration.

in accordance with this opinion. We also award Svendsen attorney fees on appeal.

SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, and BRIDGE, JJ., and GUY and TALMADGE, JJ. Pro Tem., concur.