# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| KEN SCHUMM, a single person, | No. 50174-1-II |
| Appellant, | |
| v. | |
| KENNETH SPILLER and MICHAELEEN SPILLER, individually and the marital community thereof, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Kenneth and Michaeleen Spiller sold real property to Ken Schumm without disclosing that the property was habitat to a threatened species of gopher. Schumm sued the Spillers, alleging fraud, misrepresentation, and breach of contract. The superior court dismissed all claims on summary judgment. We affirm.

## FACTS

### I. BACKGROUND

The Spillers owned a home and property in Thurston County (County). In September 2013, Mary Linders, a biologist from the Washington Department of Fish and Wildlife (WDFW), and Brad Thompson, a biologist from the United States Fish and Wildlife Department Service (USFWS), conducted a site visit on the Spillers' property. During the visit, the biologists determined that Mazama pocket gophers occupied the Spillers' property.[1]

---

[1] This specific type of gopher inhabits certain parts of Thurston County and is an important species to the prairie landscape.

Following the site visit, Thompson sent a letter to the Spillers stating:

Thank you for allowing us to visit your property this morning. We appreciate your willingness to share information on the distribution of the Mazama pocket gopher in your neighborhood and specifically on your property. It is useful for us to observe and discuss the kinds of practices that allow landowners to co-exist with pocket gophers on their properties. We are interested in gaining a full understanding of all the places on the landscape where pocket gophers occur in Thurston County so that the decisions we make about the status of the species will be fully informed and it is through direct interactions with citizens like you that will allow us to make the most informed determination.

If you have any further questions or concerns about having pocket gophers or your property or if you would like more information on entering into a conservation partnership with the U.S. Fish and Wildlife Service, please do not hesitate to contact me.

Clerk's Papers (CP) at 132. The Spillers did not join the conservation partnership.

In April 2014, USFWS issued a press release announcing that the legal status of Mazama pocket gophers in the County had been changed to "threatened species."[2] CP at 45. In August

---

[2] A "threatened species" is any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range under the Endangered Species Act, 16 U.S.C. § 1532(20) (ESA). After a species is classified as threatened under the ESA, they are generally protected from "take." 50 C.F.R. § 17.21. The federal regulations define "take" as to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). While threatened species are protected, federal regulations allow the issuance of "special rules" for individual threatened species. 50 C.F.R. § 17.40. The federal regulations also allow the federal government the discretion to determine what "prohibitions, exemptions, or authorizations are *necessary and advisable for a species*." *In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 818 F. Supp. 2d 214, 228 (D.D.C. 2011) (alteration in original). For example, 50 C.F.R. § 17.32 and 17.40 provide that special permits can be issued to allow continued farming and ranching activities, routine maintenance at airports and road right-of-ways, and certain activities on noncommercial, single-family residential properties that contain a threatened species. In this case, prior to 2014, the Mazama pocket gophers were considered a species of concern by the USFWS. In April 2014, the pocket gophers were finally listed as a threatened species under the ESA. 50 C.F.R. § 17 (2014). After receiving this classification, the gophers were protected from "take" and this protection continues today. However, take of the gophers is still subject to certain exceptions and special rules under 16 U.S.C. § 1533d of the ESA.

2014, after listing their home for sale, the Spillers completed a "Form 17" seller's disclosure statement as required under RCW 64.06.020 and presented the form to Schumm. CP at 36. On this form, the Spillers checked "No" in response to the following questions:

1. **TITLE**
. . . .
I. Are there any zoning violations, nonconforming uses, or any other unusual restrictions on the property that would affect future construction or remodeling?
. . . .
10. **FULL DISCLOSURE BY SELLERS**
A. . . . .
Are there any other existing material defects affecting the property that a prospective buyer should know about?

CP at 36, 40. Schumm and the Spillers then entered into a residential real estate purchase and sale agreement and the parties finalized the property sale in December 2014.

In June 2015, the County issued a press release encouraging residents who were planning to build on their property to apply for building permits. The press release stated that properties listed in a building permit application would be screened for the presence of Mazama pocket gophers. The press release further stated that the County was creating a habitat conservation plan with the federal government.

Later the same month, Schumm submitted an application to build a two-story garage on the property. After Schumm's property was screened, the County notified Schumm that his property was located within a zone that may contain a gopher species and that the zone was a protected critical area. The County did not approve Schumm's building application.

3

The USFWS sent Schumm a letter in November, notifying him that his proposed building project did not comply with federal regulations. The USFWS informed Schumm that his options included modifying the footprint of his project, developing his own USFWS-approved habitat conservation plan, or waiting for the County to finalize its USFWS-approved habitat conservation plan.[3]

## II. ACTION FOR FRAUD, MISREPRESENTATION, AND BREACH OF CONTRACT

Nearly a year later, Schumm sued the Spillers for damages, alleging fraud, misrepresentation, and breach of the purchase and sale agreement. Schumm alleged that the Spillers committed fraud and misrepresentation by answering "No" on the seller's disclosure Form 17 in response to questions 1(I) and 10(A). CP at 7.

## III. MOTION FOR SUMMARY JUDGMENT

The Spillers moved for summary judgment dismissal, asserting that Schumm could not produce prima facie evidence for his claims. In support of their motion for summary judgment, the Spillers submitted a copy of the September 2013 letter from Thompson and a copy of their Form 17 disclosures.

In response, Schumm asserted that (1) the Spillers' failure to disclose both the gophers' presence and the September 2013 letter from Thompson created issues of material facts, (2) Form 17 created a duty on the Spillers to disclose the gophers' presence as "potential problems," (3) the Spillers made false representations about the condition of their property and about their knowledge of the gophers, (4) Schumm was entitled to rely on the false disclosures in Form 17,

---

[3] Concurrently with these events, the County became involved in a lawsuit over its implementation of the gopher screening process. Litigation is ongoing.

and (5) Schumm would not have purchased the property if the Spillers had been honest in their disclosures. CP at 126.

With his response, Schumm submitted an unsigned declaration from Thompson.[4] Schumm later filed a notice of errata and filed an amended signed declaration from Thompson. The signed declaration differed materially from the unsigned declaration.

Thompson's signed declaration stated that after the pocket gophers were listed as a species of concern,[5] USFWS began reaching out to property owners in the County to inform them of the need to "engage in land use practices that conserve the gopher." CP at 182. Thompson further stated that during the site inspection of the Spillers' property, the biologists observed that pocket gophers occupied the property. Thompson stated that the biologists spoke to the Spillers about the kinds of "practices that allow landowners to co-exist with pocket gophers, such as control of invasive plants and haying" and offered the Spillers the opportunity to enter into a conservation partnership. CP at 182. The signed declaration omitted any reference to the placement of "buildings, landscaping, driveways, etc." CP at 203.

---

[4] The unsigned declaration stated that during the 2013 site visit, the biologists had discussed with the Spillers the "kinds of practices that allow landowners to co-exist with pocket gophers regarding placement of buildings, landscaping, driveways, etc." CP at 130.

[5] "Species of concern" is not defined in the ESA. *See* 16 U.S.C. § 1532. "Species of concern" is considered an informal term that refers to those species that have not been petitioned or given endangered, threatened, or candidate status, but have been identified as important to monitor. Species of concern receive no legal protection and the use of the term does not necessarily mean that the species will eventually be proposed for listing as a threatened or endangered species. *See* U.S. Fish and Wildlife Service Endangered Species Program, *Species Status Codes*, (Aug. 28, 2012), https://www.fws.gov/endangered/about/listing-status-codes.html; *see also* U.S. Fish and Wildlife Service Midwest Region, *Glossary*, (Apr. 14, 2014), https://www.fws.gov/midwest/endangered/glossary/index.html.

No. 50174-1-II

On February 17, 2017, the trial court granted the Spillers' motion for summary judgment and dismissed all of Schumm's claims with prejudice.

IV. MOTION FOR RECONSIDERATION

On February 27, the due date for Schumm's motion for reconsideration,[6] Schumm filed a document titled "Plaintiff's Brief in Support of Motion for Reconsideration." CP at 202. In his brief Schumm argued, without evidence, that the Spillers were made aware by both Thompson from the USFWS and Linders of the WDFW that "trapping, killing, or removal" of the gophers was not allowed. Schumm further asserted, again without evidence, that during the September 2013 visit to the Spillers' property, Linders and Thompson discussed the various practices that allow a "landowner to co-exist with the pocket gophers regarding placement of buildings, landscaping, driveway, etc." CP at 203.

Schumm cited CR 59 as the basis for his motion for reconsideration, but did not cite a subsection of the rule identifying a specific legal ground for reconsideration. Schumm's brief included a caption with the names of the parties and the cause number and also referenced Schumm's relief sought.

---

[6] CR 59(b) provides:

A motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision. The motion shall be noted at the time it is filed, to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision, unless the court directs otherwise.

A motion for a new trial or for reconsideration shall identify the specific reasons in fact and law as to each ground on which the motion is based.

At the same time he filed his brief, Schumm filed an unsigned declaration of Linders's.[7] Attached as an exhibit to Linders's declaration were excerpts of federal regulations detailing the "threatened species" status given to the gophers in April 2014. CP at 212. The documents were filed at 5:00 p.m. on February 27 and were electronically served on the Spillers at 6:26 p.m. the same day.

The next day, Schumm filed a document titled "Motion for Reconsideration of Summary Judgment" and also filed an updated and signed declaration by Linders. CP at 255. Like the Thompson declaration, the signed Linders declaration materially differed from the unsigned declaration. Linders's signed declaration omitted any information regarding the biologist informing the Spillers about the pocket gophers being a "species of concern" and also omitted any information that "trapping, killing, or removal [of the gophers] was not allowed," or that there were restrictions on the "placement of buildings, landscaping, driveways, etc." CP at 253-54.

In addition to responding to the merits of Schumm's reconsideration motion, the Spillers argued that the motion should be stricken because it was untimely served under Thurston County Superior Court Local General Rule 30(c)(1), and that Linders's signed declaration should be stricken because it was untimely filed.

---

[7] Linders's unsigned declaration stated that the WDFW participated in outreach efforts to property owners in the County to inform them about the status of the Mazama pocket gophers being a "species of concern" and informed the owners of the need to engage in "land use practices that conserve the gopher." CP at 209. The unsigned declaration also stated that the biologists "made it clear that trapping, killing, or removal [of the gophers] was not allowed" and that the "placement of buildings, landscaping, driveways, etc." were discussed with the Spillers. CP at 210. The declaration did not define "species of concern."

The trial court denied the Spillers' motion to strike and also denied Schumm's motion for reconsideration. Schumm appeals the trial court's orders granting the Spillers' motion for summary judgment dismissal and denying his motion for reconsideration.

ANALYSIS

I. TIMELY APPEAL

As a preliminary matter, the Spillers argue that this court lacks jurisdiction to hear Schumm's appeal because it is untimely. The Spillers assert that because Schumm's motion for reconsideration was untimely, his appeal to this court is also untimely. We disagree.

We review de novo questions of a court's subject matter jurisdiction. *In re Marriage of McDermott*, 175 Wn. App. 467, 479, 307 P.3d 717 (2013). A party may raise a question of subject matter jurisdiction for the first time at any point in a proceeding, even on appeal. *McDermott*, 175 Wn. App. at 479.

A necessary prerequisite to appellate jurisdiction is the timely filing of the notice of appeal. *Singleton v. Naegeli Reporting Corp*., 142 Wn. App. 598, 603, 175 P.3d 594 (2008); RAP 5.2(a), 5.2 (e). An appellant generally has 30 days from the entry of judgment to file its appeal. *Singleton*, 142 Wn. App. at 603. A timely motion for reconsideration will extend that deadline. *Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 367, 849 P.2d 1225 (1993). But, an untimely motion for reconsideration will not. *Schaefco*, 121 Wn.2d at 368.

CR 59(b) establishes the time limits for a motion for reconsideration:

A motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision. The motion shall be noted at the time it is filed, to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision, unless the court directs otherwise.

CR 8(e)(1) states, "No technical forms of pleadings or motions are required."  Also, CR 10(a) requires that "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, . . . and an identification as to the nature of the pleading or other paper."  We do not determine the sufficiency of a motion by its technical format or language but by its contents.  *City of Kennewick v. Vandergriff*, 109 Wn.2d 99, 102, 743 P.2d 811 (1987).

We construe pleadings liberally.  *Young v. Savidge*, 155 Wn. App. 806, 821 n.10, 230 P.3d 222 (2010).  When a filing is sufficiently explicit to constitute a motion, a trial court may consider the motion.  *See City of Kennewick*, 109 Wn.2d at 102 (holding that a letter filed by a defendant was sufficiently explicit to constitute a motion when the letter contained a case number, referenced a court rule, and detailed the relief sought, even though the letter did not conform to all technical requirements).

The Spillers assert that Schumm filed only a place holder brief in support of his motion for reconsideration on the due date but failed to file his actual motion for reconsideration until the next day.  Although Schumm's brief filed in support of his motion for reconsideration was not technically titled a "motion for reconsideration," his brief was sufficiently explicit to constitute a motion for reconsideration of the court's order on summary judgment.   Schumm's document was captioned with the names of the parties and the proper case number.  The brief detailed that he was seeking reconsideration under CR 59 and reiterated that the Spillers should have disclosed the presence of the gophers on their Form 17.  The brief also requested that the trial court grant Schumm's motion for reconsideration and reverse the order granting the Spillers' motion for summary judgment.

We hold that Schumm's motion for reconsideration was timely filed and therefore this court has jurisdiction to hear this appeal. Although it would have been better practice for Schumm to have filed all his documents on the due date, the brief that Schumm filed adequately constituted a motion for reconsideration.[8] *City of Kennewick*, 109 Wn.2d at 102.

The Spillers also argue that because they were not served until after 5:00 p.m. on February 27, Schumm failed to properly follow the timing requirements of CR 59. But CR 59(b) requires only that the motion be *filed* within 10 days after the entry of the order and noted to be heard within 30 days. CR 6(d) governs service of motions, requiring only that they be served 5 days prior to the motion. Therefore, even though Schumm served the Spillers after 5:00 p.m. on the day the motion for reconsideration was due, Schumm was under no obligation to serve the Spillers on the same day he filed the motion. *See* CR 59(b).

Because Schumm's brief constituted a valid CR 59 motion for reconsideration, his motion was timely filed, and because Schumm was under no obligation to serve the Spillers the same day, his motion was also timely served. Accordingly, Schumm's notice of appeal to this court was timely.[9]

---

[8] Although not argued or briefed, a trial court has discretion to hear motions to reconsider where the moving party has strictly complied with the filing and service requirements of CR 59, but the motion's form is improper, rendering it ambiguous. *See, e.g.*, *Amy v. Kmart of Washington LLC*, 153 Wn. App. 846, 856, 223 P.3d 1247 (2009). The trial court here did not abuse its discretion in considering Schumm's motion for reconsideration.

[9] RAP 5.2(a) provides that a notice of appeal must be filed in the trial court within 30 after the entry of the decision of the trial court that the party filing the notice wants reviewed. Schumm filed his notice of appeal with this court on March 27, 2017. Based on the date of the filing of his motion for reconsideration, February 27, 2017, Schumm's notice of appeal to this court was timely. *See* RAP 5.2(a).

## II. SUMMARY JUDGMENT DISMISSAL OF SCHUMM'S CLAIMS

Schumm asserts that genuine issues of material fact exist regarding his claims that the Spillers committed fraud and negligent misrepresentation by failing to disclose the presence of the gophers on Form 17. We disagree.

1.      *Legal Principles*

We review summary judgment decisions de novo and perform the same inquiry as the superior court. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). The evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). A material fact is one upon which the outcome of the litigation depends. *In re Estate of Black*, 153 Wn.2d 152, 160, 102 P.3d 796 (2004).

A defendant is entitled to summary judgment if (1) the defendant shows the absence of evidence to support the plaintiff's case and (2) the plaintiff fails to come forward with evidence creating a genuine issue of material fact on an element essential to the plaintiff's case. *Clark Cty. Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.*, 180 Wn. App. 689, 699, 324 P.3d 743 (2014). If a defendant satisfies the initial burden of establishing the absence of a material fact, the inquiry then shifts to the plaintiff. *Burton v. Twin Commander Aircraft LLC*, 171 Wn.2d 204, 222-23, 254 P.3d 778 (2011). If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, then summary judgment is proper. *Burton*, 171 Wn.2d at 223.

Mere allegations, argumentative assertions, conclusive statements, or speculation do not raise issues of material fact sufficient to preclude a grant of summary judgment. *Spradlin Rock Products, Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor Cty.*, 164 Wn. App. 641, 654, 266 P.3d 229 (2011). Where reasonable minds could reach but one conclusion from the admissible facts, summary judgment should be granted. *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 12 n.2, 98 P.3d 491 (2004).

Sellers of real property must complete a seller's disclosure statement in a specific format known as Form 17, for the purpose of informing buyers of certain matters relating to the property which are known to the seller. RCW 64 .06.020(1); *Svendsen v. Stock*, 143 Wn.2d 546, 550, 556-57, 23 P.3d 455 (2001). Sellers are required to disclose whether there are any unusual restrictions on the property that would affect future construction or remodeling and also whether there are any other existing material defects affecting the property that a prospective buyer should know about. RCW 64.06.020(1)(I), (1)(I)(9)(A).

2.      *Fraud*

Schumm argues that the Spillers committed fraud when they failed to disclose the presence of the Mazama pocket gophers on their property, the 2013 site visit by state and federal wildlife service officials, and the September 2013 letter from wildlife officials. We disagree.

To establish a claim of fraud, a plaintiff must prove each of the nine fraud elements by clear, cogent, and convincing evidence:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

*Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166, 273 P.3d 965 (2012). To prevail under a fraud theory, Schumm had to show that he could establish by clear, cogent, and convincing evidence at trial that the Spillers had told him something they knew to be false.

Schumm's fraud claim is based on the disclosures the Spillers made on Form 17. The Spillers disclosed that there were no unusual restrictions on the property that would affect future construction or remodeling and that there were no existing material defects affected the property that a prospective buyer should know about. Schumm does not allege that the Spillers made any other factual statements concerning the gophers.

Reviewing the evidence in the light most favorable to Schumm, there are no genuine issues of material fact regarding his fraud claim. To sustain his fraud claim, Schumm had to show that he could produce clear and convincing evidence that at the time they filled out Form 17, the Spillers *knew* that the gopher's presence caused an unusual restriction or a material defect. There is no such evidence.

The only evidence Schumm provided on this issue was Thompson's declaration and Thompson's September 2013 letter to the Spillers. And although Thompson's unsigned declaration contains language about Thompson communicating with the Spillers about "land use practices" and about the "placement of buildings, landscaping, driveways, etc.," Thompson's signed declaration omits any such language and states that during the visit the biologists examined the Spillers' property, found evidence of gophers, and spoke with the Spillers about coexisting with the gophers by controlling invasive species and haying. This evidence does not show that at the time of the site visit or at the time of their Form 17 disclosures, the Spillers actually knew of any restrictions or defects on the land due to the gophers.

13

Additionally, while Schumm contends in his briefing that the September 2013 letter from Thompson informed the Spillers of "land use restrictions" due to the presence of pocket gophers, he misconstrues the evidence. A review of the record shows that the letter contained no information regarding land use restrictions on the property; rather, the letter simply informed the Spillers about an optional conservation program and thanked the Spillers for allowing the USFWS to conduct a site visit.

Schumm's assertion that the Spillers knew that the gophers created restrictions is speculation at best. Schumm presented no evidence that the Spillers knew about the gophers' status change to that of a threatened species or that they knew of any implementation of federal regulations. Schumm provided no citation to legal authority supporting a rule that the Spillers should be imputed with the knowledge that federal regulations were promulgated in 2014 that could potentially place a restriction on their property due to the gophers. Likewise, Schumm cited to no law supporting the proposition that landowners are imputed with knowledge of restrictions or defects on their property due to the presence of a threatened species.

Because Schumm provides no evidence that the Spillers knew that the gophers created any unusual restriction or any material defect on the property, Schumm has failed to demonstrate any issue of material fact as to whether the Spillers knew the information disclosed in Form 17 was false. Because knowledge of falsity is a required element for fraud, the trial court did not err in granting the Spillers summary judgment dismissal on the fraud claim.

3.    *Negligent Misrepresentation*

Schumm also argues that a material issue of fact exists regarding his claim of whether the

Spillers negligently misrepresented that the property was free from any unusual restrictions or

material defects due to the gophers.  We disagree.

Washington has adopted the definition of negligent misrepresentation set forth in the

Restatement (Second) of Torts:

> "One who, in the course of his business, profession or employment, or in any other
> transaction in which he has a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is subject to liability for pecuniary
> loss caused to them by their justifiable reliance upon the information, if he fails to
> exercise reasonable care or competence in obtaining or communicating the
> information."

*Blair v. Nw. Tr. Servs., Inc.*, 193 Wn. App. 18, 39, 372 P.3d 127 (2016) (quoting RESTATEMENT

(SECOND) OF TORTS § 552(1) (AM. LAW INST. 1977)).  To establish negligent misrepresentation,

a plaintiff must prove by clear, cogent, and convincing evidence that

> (1) the defendant supplied information for the guidance of others in their business
> transactions that was false, (2) the defendant knew or should have known that the
> information was supplied to guide the plaintiff in his business transactions, (3) the
> defendant was negligent in obtaining or communicating the false information, (4)
> the plaintiff relied on the false information, (5) the plaintiff's reliance was
> reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007).

Schumm's negligent misrepresentation claim fails because he failed to show that the

Spillers negligently misrepresented their Form 17 disclosures.  Schumm presented no evidence

that the Spillers knew that the pocket gophers were listed as a threatened species. Nor does he argue that the Spillers negligently filled out Form 17.[10]

It is difficult to discern Schumm's precise argument on appeal regarding this issue. He appears to argue that the Spillers were negligent for failing to disclose the visit from wildlife officials, Thompson's letter, and the presence of the gophers on the property. But he does not explain how the presence of a species of concern on the property was a condition requiring disclosure under Form 17.

Schumm does not argue on appeal, nor did he argue in response to the summary judgment motion, that the Spillers were negligent in failing to discover that the gophers became a threatened species.[11] Thus, we do not consider whether the promulgation of the regulation listing the Mazama pocket gopher as a threatened species created a question of fact.

Because Schumm cannot show that the Spillers negligently communicated false information concerning a material defect or unusual restriction in their Form 17 disclosures, Schumm has failed to demonstrate any issues of fact as to whether the Spillers committed negligent misrepresentation. Accordingly, the trial court did not err in granting summary judgment dismissal of Schumm's negligent misrepresentation claim.

---

[10] Schumm argues that the Spillers were told that trapping and killing the gopher was unlawful. There is no evidence in the record to support this contention. Schumm cites to CP at 203, which is merely his brief supporting his motion for reconsideration. Schumm's briefing in the trial court is not evidence sufficient to create an issue of fact. *See Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 299, 914 P.2d 119 (1996) (appellants cite to a brief, not evidence).

[11] We note that Schumm makes a brief reference in his motion for reconsideration, without argument or authority, that the Spillers "knew or should have known" that the Mazama pocket gophers caused restrictions to development. CP at 206. His inadequately briefed argument in the trial court appears to be abandoned on appeal.

4.      *Breach of Contract*

In his complaint, Schumm asserted that the Spillers breached the purchase and sale agreement by failing to disclose the existence of the gophers.  However, Schumm has abandoned his breach of contract claim on appeal.  A party abandons an issue by failing to pursue it on appeal or by failing to brief the issue.  *Holder v. City of Vancouver*, 136 Wn. App. 104, 107, 147 P.3d 641 (2006).  Both in the trial court and on appeal, Schumm failed to make any breach of contract argument.  Because of this failure, we hold that Schumm abandoned his breach of contract claim, and we do not review it.

III.  MOTION FOR RECONSIDERATION

Schumm argues the trial court abused its discretion in denying his motion for reconsideration.  Schumm argues only that the trial court abused its discretion by failing to enter findings of fact and failing to identify any legal standards in its denial.  We disagree.[12]

1.      *Legal Principles*

With summary judgment, unlike in a trial, there is no prejudice if the court considers additional facts on reconsideration.  *Martini v. Post*, 178 Wn. App. 153, 162, 313 P.3d 473 (2013).  CR 59 governs motions for reconsideration, and it does not prohibit the submission of new or additional materials.  *Martini*, 178 Wn. App. at 162.  But the trial court cannot consider evidence that could have been discovered before it ruled.  CR 59 provides nine grounds on which a trial court may grant a motion for reconsideration.  We may affirm the trial court on any

---

[12] The Spillers argue that Schumm failed to specify the basis for his CR 59 motion and also failed to present any evidence which could not have been presented to the trial court earlier.  Because Schumm's argument fails, we need not address the Spillers' counter arguments.

grounds established by the pleadings and supported by the record. *Otis Hous. Ass'n, Inc. v. Ha*, 165 Wn.2d 582, 587, 201 P.3d 309 (2009).

2.      *Findings of Fact Not Required*

Findings of fact are superfluous on a motion for summary judgment. *Fabre v. Town of Ruston*, 180 Wn. App. 150, 158, 321 P.3d 1208 (2014). CR 52(a)(5)(B) states that findings of fact and conclusions of law are not necessary on decisions of motions under rules 12 or 56 or any other motion, except as provided in rules 41(b)(3) and 55(b)(2).

Schumm argues that the trial court abused its discretion by failing to identify the legal standard or facts relied upon and asserts that findings of fact must be made as to all material issues. However, CR 52(a)(5) is dispositive here. Because a trial court need not enter findings of fact in an order denying a motion for reconsideration, the trial court here did not err by not entering findings of fact. Accordingly, Schumm's argument fails.

## IV.  REASONABLE ATTORNEY FEES

Both Schumm and the Spillers request reasonable attorney fees on appeal. Both parties cite RAP 18.1 and RCW 4.84.330 as the basis for their requests. Schumm and the Spillers both argue that this court should award attorney fees and cost on appeal based on the language of the purchase and sale agreement. We disagree.

Reasonable attorney fees are recoverable on appeal if allowed by statute, rule, or contract, and the request is made pursuant to appellate rules governing attorney fees and expenses. RAP 18.1(a). RCW 4.84.330 permits a party to recover reasonable attorney fees and costs in any action on a contract where the contract provides for this award.

No. 50174-1-II

The parties' purchase and sale agreement contains a provision stating that the prevailing party of a suit initiated by one party to the contract against another is entitled to reasonable attorney fees and expenses. However as discussed above, Schumm abandoned his breach of contract claim. Because no contractual liability is at issue in this appeal, we decline to award fees based on RCW 4.84.330.

We affirm the orders granting summary judgment and denying the motion for reconsideration.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Lee, J.

Sutton, J.

19