[No. 35420.   Department Two.   October 27, 1960.]

R. M. FAIN, *Respondent*, v. JOHN J. NELSON *et al.*,
*Appellants*.[1]

[1]Reported in 356 P. (2d) 302.

*Milne & Box,* for appellants.

*Joe McAdams,* for respondent.

HILL, J.—We are concerned, on this appeal, with claims made by the purchasers of a substantially completed business property against the seller. To quote the trial court:

" . . . the plaintiff Fain had built a building for himself and before it was entirely completed he sold it to the defendants Nelson. . . . "

(We shall hereafter refer to the defendant John J. Nelson as though he was the only purchaser.)

The price was $60,000, and the real estate contract, executed July 15, 1957, provided: for a down payment of $12,-500, the assumption by the purchaser of certain obligations totalling $14,757.64, and a payment of $12,500 to be paid on August 15, 1957, if certain specifically designated "unfinished items with respect to the completion of the building . . . have been completed." The balance of $20,242.36 was to be paid $100 or more each month.

The purchaser withheld $1,251.44, of the $12,500 payment due August the 15th, to insure that the seller would perform certain labor and supply certain materials to complete the building. April 5, 1958, the purchaser gave written notice to the seller of "eight items of work which at that time had not been completed." It was for these eight items, and some additional claims, that the purchaser sought judgment by a cross-complaint when the seller commenced an action to recover the $1,251.44 which had been withheld from the payment due August 15, 1957.

Of the items, for which the purchaser sought recovery,

the trial court concluded that the seller was responsible for only those items which, under the contract, he was required to complete. The trial court allowed offsets totalling $809.49 against the $1,251.44 withheld and entered a judgment for the seller in the amount of $441.95, with interest thereon from August 15, 1957. The purchaser appeals.

He has assigned no error to the findings of fact; and those findings must be accepted on appeal as the established facts in the case. *Lewis v. Scott* (1959), 54 Wn. (2d) 851, 341 P. (2d) 488; *Richert v. Handly* (1957), 50 Wn. (2d) 356, 311 P. (2d) 417; *Wiley Co. v. Riggle* (1952), 40 Wn. (2d) 339, 243 P. (2d) 493; *In re Boundy's Estate* (1952), 40 Wn. (2d) 203, 242 P. (2d) 165.

We can, however, review a trial court's construction of a contract, even when it is labeled a "finding of fact." *Birkeland v. Corbett* (1958), 51 Wn. (2d) 554, 562, 320 P. (2d) 635. And, of course, we can review conclusions of law. *Buchanan v. Cassell* (1959), 53 Wn. (2d) 611, 335 P. (2d) 600; *Kane v. Klos* (1957), 50 Wn. (2d) 778, 314 P. (2d) 672; *Grove v. Payne* (1955), 47 Wn. (2d) 461, 288 P. (2d) 242.

This distinction between what we can, and cannot, review —when no error has been assigned to the findings of fact— will have some significance as we consider the errors assigned by the purchaser.

We will briefly state the claims of the purchaser on this appeal and dispose of them somewhat summarily, reserving one of the claims for more extended discussion.

A. For repair of defective roof, $1,860 together with $121.85 to repair the damage caused by the leaking roof. The trial court's position on this item was that the building, the roof included, had been accepted by the purchaser, and that the seller had no obligation except as to the unfinished items designated in the contract. This will be discussed hereafter.

B. For finishing the parking lot so that it would drain, $1,092.50. The trial court allowed $200, finding that for that amount the alley could be graded and adequate drainage achieved. The purchaser urges that this amount was insuffici-

ent and "not in accordance with the testimony," and that he could not grade the alley which had never been brought to grade by the city of Moses Lake. However, as pointed out, he made no assignments of error as to the trial court's finding of fact, and it is decisive of the issue presented.

C. For the installation of a drain in the rear of the building to prevent roof runoff from accumulating in the building's rear entrance, $666. The first suggestion, that such a drain was needed, came on April 5, 1958, eight and one-half months after the purchaser had taken possession of the premises. This was not a defect in work which the seller had done, nor was it something he had agreed to do. The trial court correctly concluded that the seller was under no obligation to install such a drain.

D. For the installation of rest rooms in the portion of the building leased to Frank V. Galfano and wife, $450. The liability claimed against the seller for this amount is based not on the contract but on a letter, dated July 19, 1957, written by the seller to the purchaser, in which the seller stated that if at any time during the term of a certain lease (dated July 15, 1957, between the purchaser and the tenants) the purchaser was

". . . required to contribute any amount up to $450.00 towards payment of the costs of installation of restrooms as specified in Paragraph #7 of the said lease, I will upon demand reimburse you for any such amount so expended up to a maximum of $450.00 and hereby authorize you to deduct such an amount from any payments which you may owe to me under the terms of that certain real estate contract entered into between you and me under date of July 15, 1957."

This is, patently, an agreement to reimburse the purchaser, if and when he has to contribute any amount up to $450 for the installation of certain rest rooms. There was no contention that the rest rooms had been installed; and the trial court was entirely correct in holding that any claim on the agreement to reimburse was premature.

E. For failure of seller to build the parking area to a specified width of 55 feet. The property acquired by the pur-

chaser included an asphalt-covered parking area, 25 feet in width and 120 feet in length. The seller planned to erect a building on adjacent property, leaving not less than 30 feet of his property for parking area—with the same length. Quoting the contract, the space between the two buildings (not less than 55 feet—25 feet belonging to purchaser and 30 feet belonging to seller) was to

" . . . be used as a parking lot for the use of customers and visitors to both buildings, and the seller herein undertakes (upon completion of construction of the planned new building) to complete its development as such a parking lot by installing an asphalt pavement according to the same thickness and quality herein previously specified."

The planned "new building" had not been constructed; but the purchaser insisted that it was implied that the parking lot would be completed to its contemplated width within a reasonable time, even though no new building was ever constructed. If that be conceded, the trial court concluded that the evidence was too indefinite to sustain a judgment for damages. We agree.

We have reserved for further discussion only *A, supra*: The claim for $1,860 for a new roof, and $121.85 for repairing damages caused by leaks in the roof which was on the building when the purchaser acquired it.

The formal findings of fact make no specific reference to the claims relating to the roof, but finding of fact XI *makes* the memorandum opinion filed by the court a portion of the findings of fact and incorporated it, by reference, into the findings. In his memorandum opinion the trial court said:

"It appears to the Court that insofar as the building was concerned there was no representation or warranty of fitness except for the unfinished items which are listed in the earnest money receipt. As to the rest of the building the defendants, the purchasers, evidently accepted it as it was. A case in point on the question of warranty of fitness is the recent case of Hoye vs. Century Builders, 52 Wash. 2nd, 830; 329 Pac. 2nd, 474.

"The largest item of damages requested by the defendants concerns the replacement of the roof for which they claim $1860.00 and related to this is the damage for redecorating the bar and dance hall ceiling where the same was damaged

by water from the leaking roof. The roof was put on this building before the defendants purchased the building and Mr. Galfano testified that they were having trouble with the roof before Nelson bought an interest in the building. An investigation of the roof or the asking of some questions at the time the defendants purchased the building would have brought the condition of the roof to light at that time. However, nothing was said in the contract about the roof and the building was accepted, except for the uncompleted items that were listed. The evidence in the case seems to be clear that the roof leaked and that it had to be replaced; however, it is not clear that Mr. Fain knew that the roof was not put on properly. He gave no testimony about the roof himself, there was no showing of his personal knowledge on that item and no representation has been shown by Mr. Fain that the roof was of any particular grade or quality. Therefore, it appears to the Court that there is no basis for any liability for damages because of the leaking roof and likewise there would be no basis for the cost of redecorating the bar and dance hall because of damages by water from the leaking roof."

The purchaser insists that there was an implied warranty of fitness for the intended purpose and places great reliance on *Hoye v. Century Builders,* cited, *supra,* by the trial court. That case seems, to us, to have no application to the present situation. It concerned a construction contract and not a sale of a building which was substantially completed. The court there said (p. 833),

" . . . A contract to construct a new dwelling is one for work, labor and materials. Appellant held itself out as an experienced builder. It furnished the plans for the house. We have no hesitancy in saying, under the circumstances, the trial court was correct in holding that there was an implied warranty that the completed house would be fit for human habitation. . . . "

We can agree, further, that where the building sold is in the course of erection there can be an implied warranty that the building, when completed, will be fit for its intended purpose. *Perry v. Sharon Development Co.* (1937), 4 All E. R. 390, C. A., Digest Supp.; *Miller v. Cannon Hill Estates, Ltd.* (1931), 2 K. B. 123, Digest Supp. The rationale of these cases is that the contract to convey the

property and the contract to construct the building, or complete its construction, are, in a sense, severable. However, the facts of the present case, in at least four particulars, make it impossible to bring it within the rule of implied warranty in construction-contract cases:

First: The building was practically completed at the time of sale. It had been occupied for two months or more by tenants who operated the "Roma Inn"; and on the day the contract of sale was signed and possession taken by the purchaser, he signed a lease with the same tenant whereby the tenant took possession of an additional 2,000 square feet of space.

Second: The terms of the earnest money receipt and the contract of July 15, 1957, clearly indicate that the purchaser was to take possession on that date, and the seller's "right and obligation to go upon the premises either in person or by agent or employees" was only "to complete the unfinished items as specified in the Earnest Money Receipt and Agreement, dated July 11, 1957," none of which had anything to do with the roof.

Third: The purchaser was an experienced dealer in, and operator of, comparable rental properties; and, after making his own investigation, he had set out in the earnest money receipt and contract the items which the seller was to complete, and the purchaser could withhold the $12,500 payment, due a month later, until the work so designated was completed.

Fourth: While the purchaser made no inspection of the roof, he could have done so; and the inspection or an inquiry directed to the tenant would have revealed the conditions which made a new roof necessary. The purchaser (Nelson) testified:

"No, I said I do not go on the roof because it is not necessary; I do not know enough about roofs to go up there it will just cause trouble because I do not know—I'm not a roofer, and usually on any roof that we buy—or any building we buy or any new roof we build we have a guarantee on it. When we buy a building there is always an agreement that some roofer goes up and examines that building, repairs what is necessary and puts a guarantee on it before

we put up the earnest money."

It is clear that he realized the importance of having the roof inspected on a building he was purchasing or building. Significantly, although he took possession of the premises July 15, 1957, his first reference to the roof is in a letter written shortly after September 4, 1957, where he states:

"I will require a 5 year guarantee on the roof, that it will not leak etc; The same as I receive here in Seattle for a new or replaced roof. . . ."

This was an attempt to write a new condition into the contract.

For these reasons, we do not believe that the purchaser, in this case, can avail himself of a claim of implied warranty of fitness, which must be the basis of his claim for $1,860 for a new roof and for damages caused by the original roof leaks, for there is no express warranty; and, in addition, as the trial court pointed out, there was nothing in the record to indicate that the seller knew that the roof was defective; and there is no suggestion of concealment on his part, or of silence when he should have spoken.

The judgment appealed from is affirmed.

WEAVER, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.

