[No. 12967–8–I. Division One. December 9, 1985.]

GENE C. LUXON, ET AL, *Appellants,* v. JAMES G.
CAVIEZEL, ET AL, *Respondents.*

*C. Robert Collins,* for appellants.

*Mark T. Soine,* for respondents.

RINGOLD, J.—James and Margaret Caviezel bought a house built by Gene and Grace Luxon. In an action to foreclose a deed of trust,[1] the Caviezels counterclaimed for breach of the implied warranty of habitability, fraud, and violation of the Consumer Protection Act, RCW 19.86. The trial court gave judgment to the Caviezels on their first two claims, but found no breach of the Consumer Protection Act (CPA). Both parties appeal.

The following is a summary of the trial court's findings.[2] The Luxons, though principally educators by profession,

---

[1]To secure the purchase price, the Caviezels executed a promissory note and deed of trust, which the Luxons sought to foreclose in this action. The resolution of that aspect of the controversy is not appealed.

[2]No error was assigned to the trial court's findings, and they must be considered as the established facts of the case. *Obde v. Schlemeyer,* 56 Wn.2d 449, 451, 353 P.2d 672 (1960).

were engaged in the business of constructing homes for a number of years. The house bought by the Caviezels was the last house built by the Luxons and was constructed for resale. The trial court found that the Luxons were engaged in commercial construction.

The house remained vacant until it was purchased by the Caviezels. Before the sale, the Luxons became aware that water was seeping into the house and took steps to correct the problem. Though the Luxons believed they had corrected the problem, seepage reoccurred during the next wet season. The Caviezels informed the Luxons of the seepage, and the Luxons hired Mr. Cook to fix the problem. The Caviezels were dissatisfied with Cook and engaged Hughley Construction. Neither Cook nor Hughley Construction solved the problem, which was caused by the lack of properly installed perimeter drainage.

The Caviezels did not move out of the house, but a portion of the residence was impaired by the seepage and unhealthy. The cost of repairing the perimeter drainage was $2,045 and the cost of cleaning required because of the seepage was $1,059.04, for total damages relating to the seepage of $3,104.04.

When the house was built, septic system requirements by Skagit County were based on the number of bedrooms. At the time of trial, county requirements were based on square footage. Luxon built the house after receiving a septic system permit for a 2–bedroom house, but listed the house for sale as a 4–bedroom. The Caviezels intended to use five rooms in the house as bedrooms. They made this known to the Luxons, who let them believe this was practical. The Caviezels' use overloaded the septic tank system.

The trial court determined that the house was in violation of the building code for having an inadequate septic tank and that this breached an express warranty included in the earnest money agreement. The system should have been designed for at least a 4–bedroom house. The trial court found that the Caviezels sustained damages of $4,000 with respect to the septic tank system.

The trial court also found that the defects in construction materially affected the habitability of the premises. The Luxons had knowledge of these defects, but they did not inform the Caviezels. The Luxons intended the Caviezels to rely on this nondisclosure, and the Caviezels did so and were damaged as a consequence. The Caviezels could not have discovered the defects prior to purchasing the house. The trial court concluded that the Luxons had breached an implied warranty of habitability and committed fraud, but concluded that they did not violate the Consumer Protection Act.

## FRAUD

In *Obde v. Schlemeyer,* 56 Wn.2d 449, 353 P.2d 672 (1960), the Supreme Court applied the theory of fraudulent concealment to hold a vendor liable for damages, because he failed to disclose that a house was infested with termites. The court held that if there are concealed defects known to the vendor, which careful examination by the purchaser would not reveal, and they are dangerous to the property, health, or life of the purchaser, failure to disclose them amounts to fraud. *Obde,* at 452.

The court in *Liebergesell v. Evans,* 93 Wn.2d 881, 893, 613 P.2d 1170 (1980) explicated the requirements imposed upon vendors to disclose relevant information to purchasers:

> The cases considering the duty to disclose . . . speak of the vendor's silence as "fraudulent concealment", a species of fraud. The law has not yet acknowledged a general requirement of full disclosure of all relevant facts in all business relationships. However, it is clear . . . that the duty to disclose relevant information to a contractual party *can* arise as a result of the transaction itself within the parties' general obligation to deal in good faith.

This court has interpreted *Obde,* and the decisions following it, as imposing "a duty to speak in cases where the undisclosed fact was a material fact to the extent that it substantially affected adversely the value of the property or operated to materially impair or defeat the purpose of the

transaction." *Mitchell v. Straith,* 40 Wn. App. 405, 411, 698 P.2d 609 (1985).

The trial court here specifically found that the Luxons believed they had corrected the defects causing the seepage. The Luxons, therefore, cannot be liable for the damages caused by the seepage on a theory of fraudulent concealment, because they were not aware of the defect. *See Obde.*

The Luxons are liable for the damages relating to the septic tank system because they were aware that the system was inadequate for a 4–bedroom house. This defect could not be revealed by careful inspection before the sale, and an inadequate septic system is dangerous to the health of the purchaser. *See Obde.*

### Implied Warranty of Habitability

The Luxons contend that they were not regularly engaged in building houses and selling them commercially; therefore, the implied warranty of habitability does not apply to them. *Klos v. Gockel,* 87 Wn.2d 567, 570, 554 P.2d 1349 (1976). Additionally, they argue the defects complained of did not make the house uninhabitable or render the building unfit for its intended purpose.

■■ "An implied warranty of habitability attaches to the sale of a home where (1) the vendor is a commercial builder; and (2) the structure is built for sale, not personal occupancy." *Boardman v. Dorsett,* 38 Wn. App. 338, 341, 685 P.2d 615, *review denied,* 103 Wn.2d 1006 (1984). The trial court found that the Luxons were commercial builders and that the house bought by the Caviezels was built for resale. The Luxons did not assign error to these findings, and they must be considered as verities on appeal. *Davis v. Department of Labor & Indus.,* 94 Wn.2d 119, 615 P.2d 1279 (1980). "The gist of the implied warranty is that the resulting building will be fit for its intended use, *i.e.,* habitation." *Klos,* at 571. "The law of implied warranty is not broad enough to make the builder–vendor of a house absolutely liable for all mishaps occurring within the boundaries of the improved real property." *Klos,* at 571–72.

When the foundation of a house is unstable, making the house unsafe for occupancy, the implied warranty of habitability is breached. *House v. Thornton,* 76 Wn.2d 428, 457 P.2d 199 (1969). In *Klos,* however, the court found that defects in a doorframe and patio slabs were not structural defects which affected habitability; hence, there was no breach.

In *Gay v. Cornwall,* 6 Wn. App. 595, 494 P.2d 1371 (1972), the court affirmed the trial court, which had held that a sewer problem, and a leaky roof which caused water damage, among other defects, breached the implied warranty of habitability.[3] The Oregon Supreme Court has held that, "The use of the house is so dependent upon the proper disposition of waste through a properly operating septic tank and drain field system that the house would not be habitable without them." *Yepsen v. Burgess,* 269 Or. 635, 642, 525 P.2d 1019, 1023 (1974).

While the house in the case at bench does not appear to be as fraught with defects as the house in *Gay,* the situations are similar. The defect in the septic system breaches the implied warranty of habitability. *See Yepsen.* The trial court in the case sub judice found that, although the Caviezels never moved out, a portion of the residence was impaired by the seepage and the seepage was unhealthy. Under these circumstances, it was not error to hold that the seepage violated the implied warranty of habitability. *See Gay.*[4]

## Express Warranty

Paragraph 9 of the real estate purchase and sale agree-

---

[3]In *Fain v. Nelson,* 57 Wn.2d 217, 356 P.2d 302 (1960), the Supreme Court failed to reach the question of whether a defective leaky roof violated the implied warranty of habitability, because the court determined for various reasons that the purchaser was not entitled to raise the issue.

[4]While the Supreme Court in *Klos v. Gockel,* 87 Wn.2d 567, 571, 554 P.2d 1349 (1976) attaches importance to the purchasers having not moved out of the house, the case does not specifically require a purchaser to leave a home before a breach of the implied warranty of habitability can be proved.

ment states:

> Purchaser offers to purchase the property in its present condition on the terms noted. Seller hereby warrants that to the best of his knowledge the premises described herein and the improvements thereon do not materially violate the applicable building or zoning regulations and that he is unaware of any material defect in the premises or improvements . . .

██ In the findings of fact the trial court stated: "The septic tank breaches paragraph No. 9 of the Earnest Money Agreement (Exhibit '2') because it does materially violate building codes except for a two–bedroom house." Though listed as a finding of fact, this is more appropriately a conclusion of law. "Findings of fact which are conclusions of law will be interpreted as conclusions of law." *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982).

██ Neither party argued here whether the septic tank defect breached an express warranty, and the Luxons failed to assign error to the trial court's finding or conclusion that the septic tank breached an express warranty. "Appellate courts will only review claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." *Bender v. Seattle,* 99 Wn.2d 582, 599, 664 P.2d 492 (1983). Further, in the absence of argument and citation to authority, an appellate court will not consider an issue. *Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 29, 593 P.2d 156 (1979). Thus, the damages relating to the septic tank defect must be upheld on appeal because liability attaches from violation of the express warranty.

CONSUMER PROTECTION ACT

 The Caviezels contend that they were deceived by the Luxons, and this deception is a violation of the CPA. "For a private individual to initiate an action under the Consumer Protection Act, 'the conduct complained of must: (1) be unfair or deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest.'" *McRae v.*

*Bolstad,* 101 Wn.2d 161, 165, 676 P.2d 496 (1984).

The Luxons listed the house for sale as a 4-bedroom house in a multiple listing service. The trial court found that, "Plaintiff had knowledge of the size of the septic tank in relation to the size of the house." This deceptive practice fulfills the first prong of the test with respect to damages relating to the septic tank defect.

Whether the damage relating to the seepage is the result of conduct which is unfair or deceptive is a more difficult question. "For the conduct to be unfair or deceptive does not require that intent be shown if the action has the capacity to deceive a substantial portion of the purchasing public." *Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 759, 649 P.2d 828 (1982). There was no conduct, however, attributable to the Luxons which deceived the public regarding the seepage problem.

Absent a per se violation of the Consumer Protection Act, in order to establish an impact on the public interest, a plaintiff must satisfy the test enunciated in *Anhold v. Daniels,* 94 Wn.2d 40, 46, 614 P.2d 184 (1980):

> [T]he presence of public interest is demonstrated when the proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

In *McRae,* the Supreme Court held that a prior instance of possible misrepresentation coupled with listing the property in a multiple listing service satisfied the requirements of the public interest test. Here there is no prior instance of possible deception in the record. The listing, however, of the house to the general public had the likelihood to deceive a substantial portion of the general public. In *McRae,* liability was imposed upon the owner, even though there was no showing that there was any potential for repetition in the sale of any other house. The court, therefore,

held that the *Anhold* test, requiring that the deceptive acts or practices have a *potential* for repetition, may be met due to the manner in which the sale of the subject property was presented to the public. In the present case, there is enough to satisfy the requirement that the conduct impact the public interest. *See Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 748, 551 P.2d 1398 (1976).

We affirm the trial court's judgment based on the theories of fraud and implied and express warranties. We reverse the trial court's conclusion that there was no violation of the Consumer Protection Act and remand for a determination under RCW 19.86.090 of treble damages and attorney fees, incurred at trial and on appeal, relating to the inadequate septic tank system.

GROSSE and WEBSTER, JJ., concur.