[No. 22348-5-III. Division Three. October 5, 2004.]

ARTURO ALEJANDRE, ET AL., *Appellants*, v. MARY M. BULL, *Respondent*.

*Ronald K. McAdams* (of *McAdams, Ponti & Wernette, P.S.*), for appellants.

*Albert J. Golden*, for respondent.

KURTZ, J. — Mary M. Bull sold a house with a defective septic system to Arturo and Norma Alejandre. The Alejandres sued Ms. Bull for fraudulently or negligently misrepresenting the condition of the septic system. The Alejandres' case proceeded to trial and, after they rested their case, the trial court dismissed their claims. The court ruled as a matter of law that they had failed to prove their claims and the court further ruled that their claims were

barred by the economic loss rule. We reverse the court's order dismissing the Alejandres' claims and remand their claims for trial. We conclude the Alejandres presented sufficient evidence to establish their claims. We further hold their claims are not barred by the economic loss rule because Ms. Bull and the Alejandres were not parties to a contract that allocated risk for fraudulent or negligent misrepresentation claims.

## FACTS

In September 2001, Ms. Bull agreed to sell her residence to the Alejandres. The parties signed an earnest money agreement. In that agreement, Ms. Bull represented that the property was served by a septic system. The agreement contained no other representations regarding the septic system. In the agreement, Ms. Bull promised to have the septic tank pumped prior to closing.

The earnest money agreement contained an inspection addendum which provided, among other things, that the sale was contingent upon an inspection of the septic system. It further provided that "[a]ll inspection(s) must be satisfactory to the Buyer, in the Buyer's sole discretion." Ex. 4. Before closing, the Alejandres received a copy of a bill from Walt's Septic Tank Service. It stated that the tank had been pumped and that the septic system's back baffle could not be inspected but that there was no obvious malfunction of the system at the time the tank was pumped. The Alejandres did not object to the information contained in the document, indicating their acceptance of it.

■■ Prior to closing, Ms. Bull provided the Alejandres with the disclosure statement mandated by RCW 64-.06.020. Chapter 64.06 RCW, entitled "Residential Real Property Transfers—Seller's Disclosures," applies to residential property sales and requires sellers to make certain disclosures about the sale property. If a buyer is unhappy with those disclosures, in the buyer's sole discretion, the buyer may rescind the earnest money agreement, provided

the buyer does so within three days after the receipt of the disclosure statement. RCW 64.06.030. In other words, the effect of this statute is to give the buyer a three-day option to change his or her mind about the sale. Conversely, a buyer may expressly waive the buyer's rights of rescission after receipt of the disclosure statement. RCW 64.06.030. Significantly, RCW 64.06.070 expressly provides that nothing in chapter 64.06 RCW extinguishes or impairs any rights or remedies of a buyer of real estate against the seller and it further provides that nothing in the chapter creates a new right or remedy for the buyer of residential real property.

In her disclosure statement, Ms. Bull was required to disclose to the Alejandres whether there were "any other material defects affecting this property or its value that a prospective buyer should know about." She responded "no." Ex. 5. She further disclosed that the house was serviced by a septic system, which had last been pumped in the fall of 2000. She further stated that the septic system had last been inspected in the fall of 2000, and that "Walt Johnson Jr. replaced broken line between house and septic tank." Ex. 5. Additionally, Ms. Bull disclosed that she was aware of changes or repairs to the septic tank system.

■ The Alejandres received and accepted Ms. Bull's disclosures. The disclosure statement included a provision that provided that the buyer had a duty to "pay diligent attention to any material defects which are known to Buyer and can be known to Buyer by utilizing diligent attention and observation." Ex. 5. The Alejandres signed the section of the disclosure statement entitled "BUYER'S WAIVER OF RIGHT TO REVOKE OFFER." Ex. 5. By signing this section, they waived their right to revoke their offer to purchase based upon the RCW 64.06.020 disclosures.

Before the sale could be closed, the Alejandres' bank required an inspection of the property. The report's general inspection summary stated that the purpose of the inspection was to notify the client of all defects or potential problems. Regarding the septic system, the report stated

"everything drains OK" and "Performs Intended Function."
Ex. 7.

The sale was closed on December 10, 2001. The Alejandres moved into the property on or about December 17.

In late January 2002, the Alejandres began experiencing problems with their septic system. Inside their home, they detected an odor. They heard "water gurgling like it was coming back up." Report of Proceedings (RP) at 15. Outside their home, they noticed another foul odor. They associated this odor with the ground around the septic tank, which they described as soggy.

By February, the Alejandres realized the problem with their septic system required professional assistance. They called William Duncan of Gary's Septic Tank Service. He informed them that he could pump the tank, but he could not fix the problem. He informed them that he had looked at the septic system for Ms. Bull and had told her the drain fields for the septic tank were not working. He further stated he had informed Ms. Bull that she needed to hook up with the city sewer system.

At Mr. Duncan's recommendation, the Alejandres contacted Ronald Johnson who excavated septic systems. From him, they learned that he had examined the septic system for Ms. Bull and had informed her that the septic system was too deep for his equipment. He reported that he had advised Ms. Bull that the job would require heavy equipment and would be costly.

Eventually, the Alejandres hired another excavating company, with larger equipment, to excavate and fix their septic system. The excavation revealed that the baffle to the outlet side of the septic system was gone, which allowed sludge from the septic tank to enter the drain field, plugging it. According to the Alejandres, their costs and damages totaled nearly $30,000. They sued Ms. Bull for fraud, constructive fraud, and negligent misrepresentations.

At trial, Ms. Bull testified that she had called William Duncan of Gary's Septic Tank Service approximately one

year before she sold her residence. She called him because the ground around the septic tank was " 'squishy.' " RP at 204. Mr. Duncan quoted her a fee of $500 to inspect the system and stated that he could not promise that his inspection would produce a remedy for her problems. Put off by this statement, Ms. Bull did not hire Mr. Duncan to inspect her septic system, but she did hire him to pump the septic tank. For a time, she had been doing the laundry outside her home in order to lessen the load on her septic system.

Later, Ms. Bull contacted Walt Johnson of Walt's Septic Tank Service. Mr. Johnson also pumped Ms. Bull's septic tank. Additionally, Ms. Bull testified that she had observed a Walt Johnson employee using a rotorooter. She stated that she believed the employee fixed a break in the pipe leading from the septic tank to the drain field. Because the septic system worked after these repairs, Ms. Bull believed it had been fixed.

At trial, Mr. Duncan testified that he was familiar with the Bulls' septic system because he had serviced it on another occasion. He characterized the system as sluggish. After meeting with Ms. Bull, he pumped the tank but advised her that she needed to hook up to the city sewer. He explained that the drain field was saturated and was not working properly. He further advised her that city guidelines required her to hook up to the city sewer due to the failed septic system.

In April 2000, Ms. Bull applied for a city sewer hookup, as recommended by Mr. Duncan. At that time, she learned the city's hookup fee was $5,000. Ms. Bull did not hook up to the city sewer.

In June 2001, she listed her property for sale. In information she supplied to her realtor, she stated that there was no defect in the operation of her septic system. At trial, she explained that her septic system was working when she completed the realtor's form.

The Alejandres' case was tried to a jury. After they rested their case, the trial court took the case from the jury and

dismissed all of the Alejandres' claims. The court ruled as a matter of law that the Alejandres had failed to meet the requisite burdens on all of their claims and the court further ruled that their tort claims were barred by the economic loss rule.

## ANALYSIS

■■ *Standard of Review*. A trial court may issue a judgment as a matter of law when it finds, after reviewing the evidence in the light most favorable to the nonmoving party, that there was no legally sufficient evidence or reasonable inference to support the jury's verdict in favor of the nonmoving party. CR 50; *Goodman v. Goodman*, 128 Wn.2d 366, 371, 907 P.2d 290 (1995). An appellate court applies the same standard of review as the trial court when it reviews the grant of a judgment as a matter of law. *Indus. Indem. Co. of the N.W. v. Kallevig*, 114 Wn.2d 907, 915, 792 P.2d 520 (1990).

■ *Fraudulent Concealment or Misrepresentation*. The Alejandres contend Ms. Bull fraudulently failed to disclose the problems with her septic system. There are two ways to establish fraudulent concealment or misrepresentation. First, the plaintiff may affirmatively plead and prove the nine elements of fraud. *Baertschi v. Jordan*, 68 Wn.2d 478, 482, 413 P.2d 657 (1966). Alternately, the plaintiff may show that the defendant breached an affirmative duty to disclose a material fact. *Stiley v. Block*, 130 Wn.2d 486, 515-16, 925 P.2d 194 (1996) (Talmadge, J., concurring); 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 18.2 (2d ed. 2000). Washington has long recognized a common law rule that in a residential real estate transaction, a seller has a duty to disclose known defects in the property that are dangerous to the property, health, or life of a buyer, but which would not be revealed upon careful examination by the buyer. *Liebergesell v. Evans*, 93 Wn.2d 881, 893, 613 P.2d 1170 (1980); *Obde v. Schlemeyer*, 56 Wn.2d 449, 452, 353 P.2d 672 (1960); *Luxon*

*v. Caviezel*, 42 Wn. App. 261, 264-65, 710 P.2d 809 (1985); *Mitchell v. Straith*, 40 Wn. App. 405, 411, 698 P.2d 609 (1985).

In *Obde*, the sellers of an apartment building were held liable for failing to disclose an infestation of termites that they had taken active steps to conceal. Only after hiring an inspector weeks after the sale did the plaintiffs learn the nature and extent of the problem. The court applied the theory of fraudulent concealment to hold the sellers liable for damages because the sellers had failed to disclose the apartment house was infested with termites. The court held that if there are concealed defects known to the sellers, which careful examination by the purchasers would not reveal and the defects are dangerous to the property, health, or life of the purchasers, failure to disclose them amounts to fraud. *Obde*, 56 Wn.2d at 452.

In *Luxon*, the sellers constructed a house with a septic system designed to serve a two-bedroom house. The sellers sold the house as a four-bedroom house. Ultimately, the sellers were held liable for fraudulent nondisclosure for the damages related to the septic system. The court reasoned that the defects could not be revealed by careful inspection before the sale and an inadequate septic system was dangerous to the health of the purchasers. *Luxon*, 42 Wn. App. at 265. The court based its decision upon " 'a duty to speak in cases where the undisclosed fact was a material fact to the extent that it substantially affected adversely the value of the property or operated to materially impair or defeat the purpose of the transaction.' " *Id*. at 264-65 (quoting *Mitchell*, 40 Wn. App. at 411).

Essentially, Ms. Bull makes two arguments in support of the court's decision to grant her judgment as a matter of law. First, she maintains the Alejandres failed to prove by clear, cogent, and convincing evidence that she knew that she was selling a house with a failed septic system. For this argument, she relies upon her testimony and the two inspections of the septic system that reported the system was working. Second, Ms. Bull argues that her disclosure

that the septic system had been repaired imposed a duty upon the Alejandres to make further inspection of the septic system. In support of this contention, she relies upon the buyer's common law duty to observe what can be seen through diligent observation and upon the buyer's statutory duty, as stated in the seller's RCW 64.06.020 disclosure statement, to pay diligent attention to any material defects that are known or can be known through diligent attention and observation.

█ In deciding this appeal, we admit the truth of the Alejandres' evidence and all evidence that can be reasonably drawn therefrom, and we interpret the evidence most strongly against Ms. Bull. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 187-88, 23 P.3d 440 (2001). For that reason, Ms. Bull's testimony does not provide a solid evidentiary foundation for judgment as a matter of law. On the critical issue of whether she knew that her home was serviced by a failed septic system, Ms. Bull's testimony is contradicted by Mr. Duncan's testimony. A trier of fact could have believed Mr. Duncan and not Ms. Bull. A trier of fact could have inferred from the evidence that Ms. Bull knew she was selling a house with a failed septic system.

Ms. Bull also relies upon the failure of two preclosing septic system inspections to discover the problem with her septic system. She asks how she could have known about the problem if trained people had failed to discover it. The answer, of course, is that Ms. Bull knew about the septic system's history of failure and the inspectors did not. Having inspected the system after the septic tank had been pumped, the inspectors limited their reports to the observation that it was working properly. A reasonable inference from the Alejandres' evidence is that the septic system worked well enough so long as the contents of the septic tank were pumped out and there was no need to utilize the system's failed drain fields.

Also, Ms. Bull emphasizes she is liable to the Alejandres only if she failed to disclose a material defect that they could not have discovered upon careful examination. She

notes that her disclosures placed the Alejandres on notice that there had been repairs to the septic system. She further argues the report from Walt's Septic Tank Service put the Alejandres on notice that the septic system's back baffle had not been inspected. Ms. Bull argues the disclosures and the report should have alerted the Alejandres to the need for a comprehensive inspection of the septic system.

As pointed out by Ms. Bull, two people—an experienced septic system person and a real estate inspector—looked at her septic system and failed to discover its problems. Knowing their examination had limited value, they specifically limited their reports to the observation that the system appeared to be working properly. The problem with the septic tank's back baffle was discovered only after the expenditure of many thousands of dollars to excavate the septic system. From this evidence, Ms. Bull has asked us to infer that she could not have known about the condition of her septic system. But the same inference is available to the Alejandres. A trier of fact could infer from this evidence that even after a careful examination of Ms. Bull's property and its septic system, the Alejandres could not have discovered the problem. And, we cannot hold as a matter of law that the Alejandres violated their duty to examine Ms. Bull's residence and septic system before purchasing it.

In sum, the Alejandres presented sufficient evidence to satisfy their burden of proof. Based upon the evidence submitted by the Alejandres, a jury could have found that Ms. Bull had actual knowledge that her house was serviced by a failed septic system and that she fraudulently concealed this information from the Alejandres. Furthermore, based upon the Alejandres' evidence, a jury could have found that the Alejandres could not have discovered the problem even after a careful examination. The trial court erred by holding otherwise.

*Negligent Misrepresentation.* The Alejandres contend the trial court erroneously dismissed their negli-

gent misrepresentation claim. Washington has adopted the *Restatement (Second) of Torts* §§ 551, 552 (1977) as the standards for a claim of negligent misrepresentation. *ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 826, 959 P.2d 651 (1998); *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 180, 876 P.2d 435 (1994). In order to sustain a claim under these sections, the Alejandres must establish, in part, a duty to disclose or to provide accurate information. Liability for failure to disclose is set out in *Restatement (Second) of Torts* § 551.

"(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

"(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

"(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

"(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading . . . ."

*Richland Sch. Dist. v. Mabton Sch. Dist.*, 111 Wn. App. 377, 385, 45 P.3d 580 (2002) (quoting RESTATEMENT, *supra*, § 551), *review denied*, 148 Wn.2d 1002 (2003). Liability for false information negligently supplied is set out in section 552.

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Richland Sch. Dist.*, 111 Wn. App. at 386 (quoting RESTATE-MENT, *supra*, § 552).

On appeal, the Alejandres argue that there was sufficient evidence and inferences from the evidence to support their negligent misrepresentation claim and to get the claim to the jury. In particular, they highlight Ms. Bull's testimony. According to the Alejandres, Ms. Bull testified that she knew and failed to disclose:

- that her septic tank was making her yard squishy in early 2000;
- that she had to do her laundry outside of her home for a number of weeks or months;
- that she knew that she had to hook her residence to the city sewer system because her septic system had failed;
- that she knew she had been granted a permit to hook up to the city sewer system;
- that repairs to the septic system would be expensive; and
- that hooking up to the city sewer system would be expensive.

Additionally, the Alejandres rely upon the disclosures in Ms. Bull's disclosure statement, particularly the representation that she did not know of any material defects affecting the property or its value that a prospective buyer should know about.[1]

In support of the court's decision to dismiss the negligent misrepresentation claim, Ms. Bull advances the same two arguments that we have rejected in connection with dismissal of the fraudulent concealment claim. First, she argues that the Alejandres did not prove by clear, cogent, and convincing evidence that she knowingly deceived them about the condition of the septic system. Second, she argues

---

[1] On appeal, Ms. Bull has neither raised nor argued the issue of whether representations contained in a RCW 64.06.020 disclosure statement can be used as a basis for a negligent misrepresentation claim. *See Svendsen v. Stock*, 143 Wn.2d 546, 23 P.3d 455 (2001).

that the Alejandres did not prove that they reasonably relied upon any representations that she may have made.

■■■ In order to prevail on their negligent misrepresentation claim, the Alejandres need not prove that Ms. Bull knowingly deceived them. Rather, the Alejandres must establish Ms. Bull breached a duty to disclose or to provide accurate information about her septic system. *Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 546-47, 55 P.3d 619 (2002); RESTATEMENT, *supra*, § 551. The issue before us is whether a trier of fact could have found that Ms. Bull failed to exercise reasonable care in representing the condition of her septic system. We hold that a trier of fact, after viewing all of the evidence in the light most favorable to the Alejandres and granting them all reasonable inferences from the evidence, could find Ms. Bull failed to exercise reasonable care in making disclosures and providing information about her septic system.

Ms. Bull also argues the Alejandres have failed to prove that they justifiably relied upon the information they allege she negligently supplied to them. In *ESCA Corp.*, the court stated "justifiable reliance" is properly defined as reliance that was reasonable under the circumstances. *ESCA Corp.*, 135 Wn.2d at 828. The court further held that RCW 4.22.005, the uniform comparative fault statute, applies to negligent misrepresentation claims. *Id.* at 831. The court explained its decision, stating "[b]y adopting comparative negligence, the harsh result of denying recovery was eliminated because the plaintiff's culpability was considered in determining total damages." *Id.* at 830. The holding in *ESCA Corp.* was reaffirmed in *Lawyers Title Insurance Corp.*, 147 Wn.2d at 550-51.

Whether a party justifiably relied upon a misrepresentation is an issue of fact. *Barnes v. Cornerstone Invs., Inc.*, 54 Wn. App. 474, 478, 773 P.2d 884 (1989). In determining whether the Alejandres' reliance upon Ms. Bull's representations was reasonable under the circumstances, we must grant them the truth of their evidence and all reasonable inferences from their evidence. If we do so, we cannot hold,

as a matter of law, that no trier of fact would find the Alejandres' reliance was not justified. The trial court erred by holding otherwise.

 *Economic Loss Rule*. The Alejandres argue the trial court erroneously applied the economic loss rule to dismiss their claims. The economic loss rule bars certain tort claims when a contract exists between parties that allocates risk and future liability. *Griffith v. Centex Real Estate Corp.*, 93 Wn. App. 202, 211, 969 P.2d 486 (1998). The rule is described as marking "the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others." *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 821, 881 P.2d 986 (1994).

Ms. Bull does not cite to any Washington cases holding that a fraudulent concealment claim is barred by the economic loss rule. Many jurisdictions that have considered this issue have determined that the economic loss rule does not bar fraud. R. Joseph Barton, Note, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 WM. & MARY L. REV. 1789, 1830 (2000). The rationale for the exception is that the prohibition against fraudulent conduct arises independently of the contract. A party to a contract cannot reasonably be held to a standard of negotiating for the possibility that the other party will deliberately misrepresent terms critical to the contract. And, it is highly unlikely that any court would uphold a provision in the contract that allows a party to limit his or her liability for fraud. Some courts that recognize the fraud exception limit its application to a claim of fraud that is not based on the parties' contractual relationship, but upon a breach of duty separate from the parties' contractual obligation. *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, 70 P.3d 1, 12-13. Finally, some courts hold that the economic loss rule bars common law fraud claims. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, 270 Wis. 2d 146, 162-67, 677 N.W.2d 233.

Washington does apply the economic loss rule to bar negligent misrepresentation claims if the contract allocates risk and future liability. For example, in *Berschauer/-Phillips*, the general contractor sued a design professional in tort to recover economic damages resulting from construction delays. The court limited recovery to the remedies provided by the contract. "We so hold to ensure that the allocation of risk and the determination of potential future liability is based on what the parties bargained for in the contract. We hold parties to their contracts." *Berschauer/-Phillips*, 124 Wn.2d at 826. The court emphasized "the importance of the precise allocation of risk as secured by contract. The fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their *expected liability exposure as bargained and provided for in the contract*." *Id.* at 827 (emphasis added).

Another example, more closely related to the facts of this case, is *Griffith v. Centex*. There, the Griffiths purchased a home from Centex, a national "builder-vendor" that specialized in sales to first-time home buyers. Centex promised quality houses. Despite this promise, Centex required its purchasers to sign a real estate contract that both limited the extent of its warranties and the rights of its purchasers to sue on those warranties. *Griffith*, 93 Wn. App. at 206-07. When the Griffiths sued Centex for the fraudulent misrepresentation of its promise to provide a quality home, the court held that their claim was barred by the economic loss rule. *Griffith*, 93 Wn. App. at 213. In essence, the court would not allow the Griffiths to circumvent the negotiated terms of the contract by bringing a tort claim.

Here, Ms. Bull relies upon the earnest money agreement and its addendums for application of the economic loss rule. She argues the parties' expectations regarding the septic system were addressed and negotiated in the earnest money agreement and the Alejandres' remedy is a contract claim based on that agreement.

 Ms. Bull and the Alejandres used a printed earnest money agreement provided by the realtor. In that agree-

ment, Ms. Bull promised to convey clear title to her property in exchange for the Alejandres' promise to pay the agreed purchase price. The agreement provided for the usual remedies, with the focus on what would happen if Ms. Bull failed to convey the property or if the Alejandres failed to pay the purchase price. At closing, both parties fulfilled their respective obligations under the earnest money agreement. In such an agreement, unlike the construction contracts referenced in *Berschauer/Phillips*, the parties normally do not bargain and provide for the allocation of risk and future liability. Furthermore, the specific contract in this case did not contain a negotiated provision, like the commercial contract in *Griffith*, whereby the parties agreed to allocate risk and future liability.

The economic loss rule bars certain tort claims when a contract exists between the parties that allocates risk and future liability. In this case, the contract does not contain such a provision. For that reason, the trial court erroneously dismissed the Alejandres' claim based upon the economic loss rule.

We reverse the order dismissing the Alejandres' claims and remand their claims for trial.

SWEENEY, A.C.J., and BROWN, J., concur.

Review granted at 154 Wn.2d 1012 (2005).